## Dan Ryan v. Herald Association, Inc., d/b/a Rutland Daily Herald

[566 A.2d 1316]

No. 87-599

Present: **Allen, C.J., Peck, Dooley and Morse, JJ., and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed August 4, 1989

*Peter F. Langrock* and *Mary E. McCaffrey*, Law Clerk (On the Brief) of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiff-Appellee.

*Robert B. Hemley* and *Dennis R. Pearson* of *Gravel and Shea*, Burlington, for Defendant-Appellant.

**Morse, J.** Plaintiff, Dan Ryan, brought this libel suit against The Rutland Herald for printing a story about illegal dumping which named him as a truck driver who hauled hazardous waste, when in fact the driver was his cousin, Jack Ryan. The jury found in plaintiff's favor and awarded him $1 in compensatory damages and $5,000 in punitive damages.

Defendant appeals. We affirm the compensatory damages award and reverse the punitive damages award.

During the summer of 1986, The Rutland Herald ran a series of articles about the trucking of rubble to Vermont from construction sites in Boston. One of the paper's reporters, Tom Mitchell, wrote an article headlined "Debris Dumping Stopped," which appeared in the paper on August 21, 1986. The article related that a West Haven landowner, Peter Thorne, agreed to stop the dumping of construction rubble on his land. Among the materials dumped were steel, one or two compressor units with oil in them, a full paint can and plastics. After outlining various officials' views on the illegality of such dumping, including those of the West Haven Zoning Administrator, William Kuehn, who "viewed the action as a serious violation of state law," the article stated: "Kuehn and Thorne said Dan Ryan, a Benson trucker, had hauled in the material."

Tom Mitchell was notified of the error, and a correction was placed in the paper two days later. Plaintiff was "razzed" by various people from time to time about being a hazardous waste trucker. The episode was embarrassing and humiliated the plaintiff.

The only explanation for the error came from Tom Mitchell. He had been told by Mr. Kuehn that Dan Ryan was the trucker in question, but Mr. Thorne told him Jack Ryan was the one. Mitchell assumed Jack was a nickname for Dan Ryan, whose name he found under truckers in the telephone book, and he checked no further. At trial, Mitchell acknowledged his "own error in judgment."

## I.

This Court reviewed and restated the law of defamation in Vermont in *Lent v. Huntoon*, 143 Vt. 539, 545–50, 470 A.2d 1162, 1167–70 (1983). We summarized the elements of a defamation action as follows:

> (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages.

*Id.* at 546–47, 470 A.2d at 1168 (footnote omitted). Some of these elements now require further elaboration.

*Lent*'s restatement represented a considerable departure from the common law of defamation. This process was not unique to Vermont; libel law in all states has undergone similar transformation since the United States Supreme Court first subjected the law of libel to constitutional scrutiny in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). The common law favored plaintiffs in libel cases, and had developed several presumptions in their aid. Harry Kalven has stated them succinctly:

> First, defamatory statements were presumed to be false. This placed the burden of proving truth upon the publisher, and truth turned out to be a most difficult item to prove firmly in court. Second, it did not matter whether the falsehood was the result of malice, negligence, or bad luck. You published defamation at your peril; and, as the old law put it, malice was presumed from the fact of publication. Third, the aggrieved party did not have to prove *actual* harm to his reputation; it too was inferred or presumed from the fact of publication, making possible the award of what were technically called *general* damages.

H. Kalven, Jr., *A Worthy Tradition: Freedom of Speech in America* 60–61 (1988) (emphasis in original). Professor Kalven continued:

> The common law recognized that these rules had a chilling effect on speech in certain valued communication situations and offset their harshness with a series of *privileges*, such as those for fair comment in literary criticism, for speeches by legislators on the floor of the house, for reprinting from official public records, and for fair comment on public officials or candidates for public office.

*Id.* at 61 (emphasis in original). Since the *New York Times* case, the Supreme Court has recognized that the common-law privileges do not in all cases adequately protect First Amendment values. Largely, but not completely, superseding the privileges, therefore, is the constitutional jurisprudence of

the past twenty–five years that seeks to resolve the "tension [that] necessarily exists between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). Even though "there is no constitutional value in false statements of fact[,] ... [t]he First Amendment requires that we protect some falsehood in order to protect speech that matters." *Id.* at 340–41.

## A. *The Fault Element*

At common law, the intentional publication of defamatory material was a strict liability offense. See Prosser and Keeton on Torts § 113, at 804 (5th ed. 1984) (hereinafter Prosser and Keeton). That plaintiffs now must prove some level of fault— at least where the defendant is the press or broadcasting media or one who uses the same[1]—appears to be mandated by

---

[1] While the type of plaintiff clearly matters in the constitutional law of defamation, as explained in the text below, the significance of the type of defendant is far from certain. *Gertz* involved the publication and public circulation of defamatory statements in a magazine of the John Birch Society. 418 U.S. at 325–26. The Court wrote broadly and did not explicitly limit its requirement that plaintiffs prove fault to cases involving media defendants. Nevertheless, the balance struck in *Gertz* between First Amendment interests and the state's interest in compensating defamed individuals depended on the weight assigned these "competing concerns." The Court emphasized the weight of the former in light of "the need for a vigorous and uninhibited press." *Id.* at 342. In contrast, where the defendant is a private individual whose defamatory statements were made in private letters to private parties, as in *Lent v. Huntoon*, 143 Vt. at 543, 470 A.2d at 1166, the First Amendment interest in protecting the defendant's speech is arguably less pressing, and the resulting accommodation might be different. In *Lent* we were therefore not *required* to adopt the precise limitations on state libel law imposed by *Gertz*; *Lent*'s inference to the contrary appears to overstate the generality of the precedent. See 143 Vt. at 546 n.1, 470 A.2d at 1168 n.1. Indeed, this Court chose expressly to distinguish media from nonmedia defendants in *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 143 Vt. 66, 75, 461 A.2d 414, 418 (1983), *aff'd on other grounds*, 472 U.S. 749, 763 (1985). The United States Supreme Court's rejection of this Court's rationale in *Dun & Bradstreet*, however, casts doubt on the vitality of the distinction for constitutional purposes. See 472 U.S. at 783 (Brennan, J., dissenting) ("argument that *Gertz* should be limited to the media misapprehends our cases").

In any event, unlike *Lent*, the present case is a lawsuit against a newspaper of general circulation, and *Gertz* is unequivocally controlling.

the holding of the Court in *Gertz*.[2] The Supreme Court balanced the "competing concerns" of the First Amendment and "the state interest in compensating private individuals for wrongful injury to reputation," and concluded "that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." 418 U.S. at 347. "Some negligence," *Lent*'s second element, satisfies this constitutional test.[3] See *Stone v. Banner Publishing Corp.*, 677 F. Supp. 242, 246–47 (D. Vt. 1988) (discussing negligence standard in libel action).

■ Where the individual defamed is a "public" person, more than negligence on the part of the publisher must be proved—thus, the "greater fault" referred to in the second element quoted above. Under the First Amendment, "malice" must be proved where the alleged defamation involves a public official or public figure.[4] *Gertz*, 418 U.S. at 342–43; *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 164 (1967) (Warren, C.J.,

---

[2] While the matter is far from settled, the fault requirement in *Gertz* may also be limited to cases in which the content of the defamatory material is of public concern. *Gertz* itself did not so limit its holding. In the more recent case of *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. at 763, however, the Supreme Court limited a second holding in *Gertz*—that plaintiffs could not recover punitive and presumed damages absent a showing of malice—to cases involving matters of public concern. See *infra* note 7. *Dun & Bradstreet* did not address the question of fault. See generally Prosser and Keeton, ch. 19 (Supp. 1988) (and cases cited). Since the defamation in the present case does involve matters of public concern, namely, illegal dumping of hazardous wastes, the requirement that plaintiff prove negligence is unaffected by these uncertainties.

[3] The holding in *Gertz* applies only in situations where "the substance of the defamatory statement 'makes substantial danger to reputation apparent.'" 418 U.S. at 348 (quoting *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155 (1967)). The Court, of course, was not leaving open the possibility that states may impose liability without fault where the defamatory potential is not obvious, only that a *higher* degree of fault might be required by the First Amendment in such circumstances. In the case at bar, the danger to plaintiff's reputation was apparent from statements quoted in the article; we therefore have no cause to consider a newspaper's liability for "a factual misstatement whose content did not warn a reasonably prudent editor ... of its defamatory potential." *Id.*

[4] In contrast, a private person "has relinquished no part of his interest in the protection of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood." *Gertz*, 418 U.S. at 345.

concurring in result); *New York Times v. Sullivan*, 376 U.S. at 279–80; *Burgess v. Reformer Publishing Corp.*, 146 Vt. 612, 614–15, 508 A.2d 1359, 1360 (1986). A defendant acts with malice in this constitutional sense ("actual malice") if it knows the defamatory statement is false or at least has serious doubts as to its truth; that is, if it publishes the material exhibiting "reckless disregard" for the truth. *Gertz*, 418 U.S. at 334 n.6; *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). There is no claim here that plaintiff is a public official or public figure; therefore he need not prove constitutional or actual malice to establish defendant's liability for defamation.

■ Even where the plaintiff is not a public official or figure, however, constitutional malice must be proved in order to recover presumed or punitive damages. *Gertz*, 418 U.S. at 349–50. Furthermore, under Vermont law, punitive damages are available only where common-law malice, in addition to constitutional malice, is proved. Malice in this second sense ("simple malice")[5] "'may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights.'" *Lent*, 143 Vt. at 550, 470 A.2d at 1170 (quoting *Shortle v. Central Vermont Public Service Corp.*, 137 Vt. 32, 33, 399 A.2d 517, 518 (1979)). In short, plaintiff must establish malice in both senses in order to win punitive damages.

## B. *The Actual Harm Element*

Libel, or written defamation (as well as certain categories of slander, or spoken defamation), is considered "actionable per se" under the common law in Vermont. This means both that harm to reputation is presumed from the mere publication of a defamatory falsehood (so-called "general damages") and that "special damages" (that is, pecuniary loss suffered as a result of the defamation) need not be specially pleaded and proved by the plaintiff. *Id.* at 545–46, 470 A.2d at 1167;

---

[5] *Lent* used the term "actual malice" to refer to common-law or simple malice, 143 Vt. at 550 n.3, 470 A.2d at 1170 n.3; this should be avoided in the interests of uniform usage, since "actual malice" is used by the United States Supreme Court to denote constitutional malice as defined by *New York Times* and progeny.

*Lancour v. Herald & Globe Ass'n*, 112 Vt. 471, 475, 28 A.2d 396, 399 (1942), *overruled on other grounds, Lent v. Huntoon*, 143 Vt. at 549, 470 A.2d at 1170. "[T]he existence of damage was conclusively presumed or assumed from the publication of the libel itself, without any evidence to show actual harm of any kind." Prosser and Keeton § 112, at 795; see also Restatement (Second) of Torts § 569 (1977).[6] In the absence of constitutional malice, however, the presumption of actual harm to reputation is no longer permissible under *Gertz*, 418 U.S. at 349, at least in the context of a lawsuit against the press or broadcasting media, and where the content of the defamatory material is of public concern;[7] hence the sixth element listed in *Lent*.[8]

*Gertz* held that, in the absence of constitutional malice, actual or "general" damages may not be presumed from the mere fact of publication. Proving actual harm is constitutionally required in light of "[t]he largely uncontrolled discretion of juries to award damages where there is no loss [which] unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms." 418 U.S. at 349. Plaintiff may still rely on the rule permitting the libel action to go forward without specially pleading and proving pecuniary loss, although its benefits are to some extent illusory

---

[6] "[D]amages were presumed because of the impossibility of affixing an exact monetary amount for present and future injury to the plaintiff's reputation, wounded feelings and humiliation, loss of business, and any consequential physical illness or pain." *Gertz*, 418 U.S. at 373 n.4 (White, J., dissenting) (citing C. McCormick, Law of Damages § 116, at 422–30 (1935)).

[7] The broad rule against presumed damages announced in *Gertz* has since been limited by the Supreme Court to defamatory material with "public" content. *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. at 763 (where content of defamatory material is not a matter of "public concern," as in commercial credit report about a private party, general damages may be presumed upon proof of publication of defamatory falsehood). Here, the defamation involves illegal dumping and hazardous wastes, certainly matters of public concern; presumed damages remain unavailable absent malice.

[8] Again, *Lent* was not bound to follow *Gertz* on this point, for the reasons discussed in note 1, *supra*. Furthermore, since the content of the defamatory material in *Lent* was of a private nature, *Dun & Bradstreet's* rule on presumed damages is now the relevant constitutional precedent.

in light of the requirement to prove some actual loss.[9] See *Lent*, 143 Vt. at 549, 470 A.2d at 1169 ("even though libel ... [is] actionable per se and special damages need not be proven, a plaintiff can no longer recover general damages without a showing of some harm"). "[J]uries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." *Gertz*, 418 U.S. at 350. As to the nature of the harm:

> [A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

*Id.*

██ In a nutshell, plaintiff, a private individual, must prove that defendant was at fault in publishing a defamatory falsehood. If he proves that defendant's fault rose to the level of constitutional malice, then plaintiff reaps a double benefit—actual damages are presumed and he may recover punitive damages upon a showing of common–law malice. If, on the other hand, plaintiff is unable to prove constitutional malice, but is able to prove that defendant was negligent in its publication of the defamatory material, then actual (though not punitive) damages are available but must be proved.

## II.

Defendant's first claim on appeal is that the article did not as a matter of law defame plaintiff. Defendant does not deny the error in the article, but argues that it did not cause harm to plaintiff's reputation. Accordingly, defendant claims the trial court erred in denying its motions for a directed verdict, for judgment n.o.v. and for a new trial.

---

[9] Prosser and Keeton begin their chapter on defamation with this lament:
> It must be confessed at the beginning that there is a great deal of the law of defamation which makes no sense. It contains anomalies and absurdities for which no legal writer ever has had a kind word ....

Prosser and Keeton § 111, at 771.

■ ■ Plaintiff was defamed if the article "'tends to lower him in the estimation of a substantial respectable group.'" *Solomon v. Atlantis Development, Inc.*, 147 Vt. 349, 358, 516 A.2d 132, 138 (1986) (quoting *Fin v. Middlebury College*, 136 Vt. 543, 544, 394 A.2d 1152, 1153 (1978)). The article gave the reader the distinct impression that Dan Ryan was involved in "a serious violation of state law" by hauling waste—some of it arguably toxic—to an illegal dump site. Viewed in the light most favorable to plaintiff, *Lent*, 143 Vt. at 551-52, 470 A.2d at 1171, the evidence was sufficient to establish injury to reputation. Plaintiff met his burden on the first element.

■ Defendant next asserts two privileges that would immunize it from liability. Neither has merit. First, defendant claims an absolute privilege of "neutral reportage," citing *Burns v. Times Argus Ass'n*, 139 Vt. 381, 389-90, 430 A.2d 773, 777-78 (1981). Assuming this privilege is indeed absolute—an issue that was not decided in *Burns* and we do not decide today —it is available in any event only to protect the *accurate* reporting of newsworthy statements. Here, the report that "Kuehn and Thorne said Dan Ryan, a Benson trucker, had hauled in the material" was inaccurate because Thorne in fact had not said this. Even if the privilege otherwise applied, therefore, it cannot be invoked in these circumstances.

■ Second, defendant raises the qualified privilege of "fair comment" as a bar to liability, relying on *Michlin v. Roberts*, 132 Vt. 154, 161, 318 A.2d 163, 167 (1974) (privilege allows "critical discussion of matters of legitimate public interest or concern made without. malice"). *Michlin* noted this privilege only in passing, as an introduction to a discussion of the constitutional law of defamation in *New York Times* and its progeny. The Court's decision clearly relied on the constitutional cases, in particular *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29 (1971). 132 Vt. at 162-63, 318 A.2d at 168-69. Because *Rosenbloom* was overruled in *Gertz*, see 418 U.S. at 346, *Michlin* is no longer good law. See *Colombo v. Times-Argus Ass'n*, 135 Vt. 454, 455, 380 A.2d 80, 82 (1977) ("insofar as it ' adopts the *Rosenbloom* 'public interest' position, [*Michlin*] is likewise overruled"). Whatever status the "fair comment" privilege may once have enjoyed in Vermont, it has for many years been superseded by the constitutional law in this area.

The privilege cannot be raised independently as a defense to liability.[10]

 Defendant's fourth claim is that plaintiff failed to prove the "actual harm" element of defamation. Defendant contends that the evidence at trial was insufficient to support a finding of actual harm and that the jury's award of only one dollar in compensatory damages signifies that no loss was shown. We disagree.

The court instructed the jury that

> plaintiff must show by a preponderance of the evidence that he suffered some actual harm .... Actual harm ... includes embarrassment, loss of reputation and standing in the community, personal humiliation and mental anguish and suffering....
>
> If you find there was some actual harm, it is up to you to fix a reasonable value to the plaintiff's actual injury ....
>
> In awarding compensatory damages, so-called, or general damages, you should award such an amount as in the exercise of your good judgment and common sense you find is fair and just compensation for injury to plaintiff's reputation and humiliation or embarrassment or mental anguish in private life as you find was directly and actually caused by the defendant's statements.
>
> In fixing that amount, you should consider plaintiff's standing in the community, the nature of the defamatory falsehood against him, the extent to which these articles were circulated, the tendency of these articles to injure a person such as plaintiff, and all of the other facts and circumstances surrounding the parties. Fair compensation *may vary from nominal damages of a dollar* if you find

---

[10] Of course, the constitutional privileges discussed in Part I of this opinion largely serve the same purpose as the common-law "fair comment" privilege. When defamation involves a matter of public interest—the concern of the "fair comment" privilege—even private plaintiffs cannot recover compensatory damages unless they prove fault, and can obtain presumed and punitive damages only if they prove malice; public plaintiffs must prove constitutional malice to obtain a judgment at all.

the injury to have been *slight,* to a substantial injury if you find the injury to have been substantial.

(Emphasis added.) Neither party objected to the instructions on actual damages. The jury evidently followed them, finding "the injury to have been slight," but "actual" nonetheless. The law does not require plaintiff to establish special damages in the nature of pecuniary loss—"impairment of reputation" and "personal humiliation" are sufficient. *Gertz,* 418 U.S. at 350.

■ Finally, defendant challenges the award of punitive damages. As stated above, punitive damages are available only where plaintiff proves malice, in both the constitutional and common-law senses. The facts in this case do not support a finding of malice. Viewing the evidence in the light most favorable to plaintiff, the most that can be concluded is that defendant was negligent: Tom Mitchell should have been more careful to verify his assumption that Jack was merely a nickname for Dan Ryan. The facts here simply do not measure up to either sort of malice; neither knowledge of falsehood, nor reckless disregard for the truth, nor actual ill will, nor a wanton disregard of plaintiff's rights are supported by the record. Checking Ryan's name in the telephone book may indicate that Mitchell had some doubts as to the reliability of his sources, as plaintiff insists, but evidently that cleared up whatever doubts he had. See *Burns v. Times Argus Ass'n,* 139 Vt. at 389, 430 A.2d at 777 ("misrepresenting the facts because of a misconception" insufficient to show malice). The award of punitive damages on this evidence was error.[11]

*Affirmed as to the finding of liability and the award of actual damages; reversed as to punitive damages.*

---

[11] Defendant also finds fault with the trial court's instructions to the jury on punitive damages, and challenges the punitive damages award as excessive. We need not reach these issues because we hold that punitive damages are unavailable in any event.