Dannenburg v. Martin, No. S0475-02 CnC (Norton, J., Jan. 10, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT

Chittenden County, ss.:                             Docket No. S0475-02 CnC


DANNENBURG

v.

MARTIN


ENTRY


This case is the latest chapter of a sprawling litigation epic concerning two lawyers, Paul Dannenberg and James Martin. This court is presently the fourth adjudicatory body to consider their various arguments.[1] While each previous case has had its own distinctive flavor and set of claims, each one has arisen from some transgression or perceived wrong that either Dannenberg or Martin has committed against the other's household. Today's trouble is no different and stems from the fact that these two are neighbors and own property on either side of Delfrate Road in Huntington, Vermont. More specifically, this case is about an aerator compressor that Martin uses to oxygenate his two trout ponds. Dannenberg and his wife find the noise from this machine to be disruptive to the

---

[1] Dannenberg and Martin have previously opposed each other in the Federal District Court of Vermont, Washington Superior Court, and the Water Resources Board.

enjoyment of their property. They also have several other complaints against Martin and his dogs. Martin, in turn, has filed a complaint of malicious prosecution against Dannenberg.[2] Both sides have motioned for summary judgment on all pending claims. The court will discuss each claim separately.

## Martin's Claim of Malicious Prosecution

In 1999 Dannenberg appealed a permit from the Agency of Natural Resources allowing Martin to apply an aquatic pesticide on his trout ponds. Dannenberg's appeal was based on concerns that pesticide runoff would contaminate the aquifer his family relied on for their drinking water, that the use of chemicals would cause general aggravation to the environment, and that Martin's aerator was too loud. The Water Resources Board initially denied Martin's motion to dismiss for lack of standing because it felt that Dannenberg's position as a neighbor and the potential for harm to his aquifer merited further investigation. Both parties appear to have squabbled over procedural issues including when experts and board members should visit the properties. These problems were resolved and the board came to the conclusion that Dannenberg's aquifer sat at a higher elevation than the trout ponds and therefore was not threatened by any runoff. Without this nexus, the board also concluded, Dannenberg did not have any other standing to challenge the permit, which was affirmed. Dannenberg did not appeal the Board's decision.

---

[2] Martin also made a second claim of intentional interference with contractual relations based on his inability to secure homeowner's insurance while this case was pending. Martin subsequently dropped this claim in April 2003 when Dannenberg filed a motion to dismiss the claim.

A claim of malicious prosecution has three essential elements: lack of probable cause, malice, and actual damages caused by the prosecution. Condosta v. Grussing, 144 Vt. 454, 458 (1984). Martin's argument fails to establish the first element, lack of probable cause. While the element of malice may be inferred from a lack of probable cause, a lack of probable cause cannot be inferred from evidence of malice as the two elements are separate and independent facts. Id. In this case, Martin argues that Dannenberg initiated his appeal because he wanted Martin to unplug his aerator. Certainly, Dannenberg's incongruous concern about the aerator in his notice of a pesticide appeal support Martin's theory, but this improper motive for litigation does not establish a lack of probable cause. See 2 D.Dobbs, The Law of Torts § 432, at 1219 (2001) (discussing the definition of probable cause as distinct from malice or purpose). Martin urges the court to combine Dannenberg's improper purpose with the Board's findings that Dannenberg's well was at a higher elevation to conclude that Dannenberg had no probable cause to appeal the pesticide permit. Martin's argument's are best answered by the Board's initial refusal to dismiss Dannenberg's appeal. Regardless of his actual purpose, Dannenberg raised a valid claim which the board decided needed further fact-finding. Once the facts were established, Dannenberg dropped his appeal. Martin's argument is based on two unsupported presumptions; that Dannenberg knew from the beginning that his aquifer sat at a higher elevation than the ponds and that it would not be affected by runoff. Martin has no evidence to show how Dannenberg would have such knowledge or such confidence in the topography of his neighborhood. Without such evidence, Martin cannot establish a lack of probable cause.

Dannenberg's appeal was also an administrative action and only quasi-judicial in nature. While this does not necessarily foreclose the possibility of a malicious prosecution claim, it does raise significant policy

questions.  See 52 Am. Jur. <u>Malicious Prosecution</u> § 15.  In particular, an action for malicious prosecution in this context raises the possibility of a chilling effect on the right of citizens to seek administrative review of potential environmental actions.  The fact that this appeal involved the application of a dangerous chemical to an open water body and an adjoining landowner, lends some basic credibility to Dannenberg's claim regardless of his subjective purpose.

<u>Dannenbergs' Claims</u>

On January 2, 2004, defendant Martin filed a motion for summary judgment on all eleven of Dannenbergs' claims against him.  The Dannenbergs filed a motion on January 21, 2004  for an enlargement of time or a continuance before responding to Martin's motion.  An extension of time was granted by Judge Katz on January 28, 2004.[3]  At the time, Judge Katz did not set a new deadline for the Dannenbergs to file a reply, but their stated purpose for seeking an extension—that the parties were close to settlement—appears to have ended some time in early 2004.  This change obviated the need for any further extensions and as of January 7, 2005, there has been no responsive brief on Martin's pending motion.  Several months is a more than reasonable extension of time considering that the original response period was only thirty days and that any purpose for an extension of time ended several months ago.  Therefore, it is in the interests of speedy and just adjudication to rule on Martin's motion at this time.  See V.R.C.P. 56 (c)(1) (allowing but not requiring opposing

---

[3] The Dannenbergs motioned for an extension of time while the parties attempted to settle their dispute or in the alternative a continuance to conduct further discovery.  Judge Katz's granted the Dannenbergs an enlargement of time under V.R.C.P. 6(b) but did not grant a continuance under V.R.C.P. 56(f).

affidavits and memorandum to summary judgment motions).

<u>Claims of Malicious Prosecution and Abuse of Process</u>

On November 29, 2001 Martin commenced a civil action against the Dannenbergs in Washington Superior Court as attorney for a friend who believed that the Dannenbergs were involved in the disappearance of her puppy. The case was dismissed six months later on procedural grounds because the statute of limitations had expired. This termination occurred early in the case before any discovery had been made and was apparently not pursued any further by Martin or his client.

By claiming malicious prosecution and abuse of process, the Dannenbergs make the same error as Martin in confusing malicious purpose with lack of probable cause—or in the case of abuse of process, the similar element of improper, illegal, or unwarranted use of court processes. <u>Jacobsen v. Garzo</u>, 149 Vt. 205, 207 (1988) (abuse of process); <u>Condosta</u>, 144 Vt. at 458 (malicious prosecution). As with Martin, the Dannenbergs have no problem establishing some evidence of malicious purpose or ulterior motivation behind Martin's filings, but this evidence does not infer a lack of probable cause or improper use of process. <u>Jacobsen</u>, 149 Vt. at 207–08. Abuse of process requires that the defendant use a court process in an illegal, or unauthorized way, such as using a fraudulent writ of attachment to obtain documents or using such a writ to obtain documents that have been excluded by a discovery order. <u>Id</u>. Merely filing in court with bad intentions does not qualify as such an abuse. In <u>Jacobsen</u>, for example, the filing of a civil action to delay a party from completing a sale was held not to be an abuse of process because the defendant had not committed any improper or unauthorized use of process. <u>Id</u>. Likewise, this present case lacks evidence of any abuse by Martin of the court process in

the Washington Superior Court action. As to a lack of probable cause, notwithstanding the Dannenbergs many arguments about the merits of the underlying case, its early dismissal on procedural grounds renders any such conclusions necessarily speculative and fails to satisfy the element for malicious prosecution. Without evidence to support the first element of either claim, summary judgment is appropriate.

## Intentional Infliction of Emotional Distress

The Dannenberg's claim that Martin has on multiple occasion committed acts of "abusive language, screaming, swearing, obscenities, and profanities." They claim that this has caused them severe "mental anguish . . . emotional distress . . . fright, anguish, shock, nervousness, and anxiety." The legal flaw in this claim is that the Dannenbergs allege a series of general acts by Martin but do not point to a single incident that may be analyzed by the court as to its outrageousness. The tort of intentional infliction of emotional distress requires the court to make this assessment as a threshold matter before it can go to a jury. Fromson v. State, 2004 VT 29. "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not trigger the tort intentional infliction of emotional distress. Restatement (Second) of Torts § 46 cmt. d. Nor can small, annoying, or distasteful incidents be cobbled together to make a collective claim of outrageous behavior. Fromson, 2004 VT 29. In this case, there is not enough evidence to illustrate intentionally "outrageous" conduct that would qualify for the tort, and the claim, therefore, necessarily fails.

## Malicious Defamation

On October 10, 2001 and again on October 21, 2001, Martin sent letters to the Dannenbergs suggesting that they were responsible for the

disappearance and possible untimely demise of puppies that belonged to Martin and Bonnie Kynoch. The Dannenbergs cite in particular to the last sentence of the second letter, which reads: "I will understand that your continued refusal to respond to the foregoing means that you in fact caused the disappearance of our puppies." To be sure this is flawed reasoning, but these words appear fraught with more emotion than logic, and they are far from an apoplectic outburst or direct accusation. The Dannenbergs may take great umbrage at anyone even considering that they would harm puppies, but Martin's letter does not make that accusation. Instead, it is a plea from a man, who has lost his puppy, for information about its whereabouts. This is not a falsehood or slander and does not qualify as libel per se. Ryan v. Herald Ass'n, 152 Vt. 275, 277–83 (1989). It was therefore not defamation to send such a letter to the Dannenbergs and Ms. Kynoch. As well, the Dannenbergs fail to present adequate evidence of actual harm suffered because of this "accusation" or an actual malice intended by Martin in making it. Id. 282–83.

Malicious Trespass to Land

The Dannenbergs claim that Martin, his guests, and their dogs have entered onto the Dannenbergs' property without consent. They claim that the unwanted visitors have assaulted and harassed the Dannenbergs and their livestock. It is not clear from the Dannenberg's complaint whether Martin, his guests, their dogs, or some combination of the three were responsible for the harassment or how many times these trespasses occurred. Martin alleges that there were only two instances of trespass and that both times he entered onto the Dannenbergs' property to retrieve dogs that had escaped from his property through no fault of his own. Vermont law on this point does allow a person to enter the property of another to reclaim his personal property, despite revocation of consent, so long as he

can do so peaceably.  Richardson v. Anthony, 12 Vt. 273 (1840) (dismissing trespass charge to farmer who entered the property of another to recover his cattle where there was no evidence of how the cattle escaped); see also Restatement (Second) of Torts § 198.  Martin's entry onto Dannenberg's property was privileged and is , hence, not subject to even the nominal liability suggested by Harris v. Carbonneau.  165 Vt. 433, 437 (1996) ("A person who intentionally enters or remains upon land in the possession of another without a privilege to do so is subject to liability for trespass.").   This last point is noteworthy because the Dannenberg's complaint fails to raise any claim of specific or actual damages resulting from Martin's entry on to their property but rather alleges general emotional distress.  See Restatement (Second) of Torts § 163 (intended intrusions causing no harm).  Martin's claim of privilege satisfies his trespass liability as a matter of law.

Assault and Battery

On August 21, 1999 the Dannenbergs claim that Martin's dog "Grizzly" knocked Anne Dannenberg off her bike while giving chase to another dog.  The Dannenbergs cites this as a specific example of Martin's failure to leash, control, or prevent his dog from assaulting them or committing numerous batteries.  They also claim that Martin through his general actions have made them fearful of imminent, offensive, unlicenced contact.  The court will not address the vague claims of general assault made by the Dannenbergs as intentional or malicious assault has specific elements that require evidence of specific actions.  Restatement (Second) of Torts § 21.  Such vague allegations will not survive summary judgment where the burden of proof is on the Dannenbergs.  Samplid Enterp., Inc. v. First Vt. Bank, 165 Vt. 22, 25 (1996).

This leaves only the August 21st incident.  There is no evidence to

support the claim that Martin trained his dog to attack the Dannenbergs or intentionally assault them. The Dannenbergs pleading makes clear that this incident was an accident, the dog was running after another dog and not at Ms. Dannenberg. The question is whether Martin was negligent in failing to restrain his dog. There is no evidence apart from the complaint to support the proposition that Grizzly was an exuberant dog or had a propensity for chasing other dogs beyond the Martin property. Cf. <u>Dodge v. McArthur</u>, 126 Vt. 81, 83 (1966) (suggesting that there is a duty of care to control a dog with a known propensity for exuberance and playfulness). As well, there is no evidence to create an issue of the "rescue" doctrine, which would allow a jury to find a duty to render assistance where the potential conduct is highly foreseeable. <u>Id</u>. The problem with these facts is that they do nothing to illustrate what Martin failed to do. The fact that Grizzly misbehaved in this instance does not mean that Martin failed to control him or that Grizzly's behavior was foreseeable. In the former case more facts would be necessary to illustrate how Martin breached a duty to control. In the latter, more facts, to prove that the incident was part of the dog's behavior or that it had a reputation for such misbehavior. Without evidence of these facts, the claims concerning Grizzly cannot survive summary judgment.

Nuisance

The last claims that the Dannenbergs raise against Martin are for nuisance. They claim that Martin has disrupted their enjoyment of their property by installing an aerator by his fish ponds, installing high-intensity flood lights as well as regular noise from screaming, partying, and general caterwauling. Martin has submitted a report by an acoustic engineer measuring the sound levels at various points from the aerator. This report states that the sound of the aerator at the boundary of the property was less

than the equivalent noise produced by a window mounted air conditioner or the sound of feet walking on gravel.

The standard for any nuisance complaint is objective based on a normal person in the locality without any hyper-sensitivities. <u>Pierce v. Riggs</u>, 149 Vt. 136, 140 (1987). The interference with the plaintiffs' enjoyment of their property must be both unreasonable and substantial. <u>Coty v. Ramsey Assocs.</u>, 149 Vt. 451, 457 (1988). The interference must be a definite offense to a normal person and "in excess of the customary interferences a land user suffers in an organized society." <u>Id</u>. (quoting 6-A American Law of Property § 28.25, at 73 (A.J. Casner ed. 1954)).

Martin's evidence is that his aerator does not create loud noises and are common for man-made fish ponds. Without further evidence to dispute this fact, there is no basis to conclude that an aerator in and of itself is a nuisance. The sound levels created by the machine do not measure any higher than normal sounds in the area. Notwithstanding the Dannenberg's complaint, there is no evidence for a jury to find that Martin has misused the aerator or modified it to create louder noise or is somehow using it beyond its stated purpose of oxygenating the pond.

As to the Dannenberg's other complaint about the partying, gunfire, floodlights, and noisy cavorting, there is nothing in the record to show that Martin's activities exceeded the normal use of his property. The Dannenbergs do not like Martin and do not approve of the way that he lives or uses his property. That is clear from their filings, but that does not translate into a coherent claim of nuisance. Unlike the defendants in either <u>Pierce</u> (dog kennel) or <u>Trickett v. Ochs</u>, 2003 VT 91 (industrialized apple orchard), Martin's use of his property is not beyond the normal use of a residential and rural property. Martin's use of his land may be different

than that of the Dannenbergs or of their neighbors, but it does not suggest excessive or abnormal use.  Cf. <u>Coty</u>, 149 Vt. at 454–57 (defendants turned their Stowe property into a literal pigsty to frustrate and punish neighbors opposing their development plans).  The Dannenbergs' generalized accusations of nuisance do not create a triable issue of fact for the jury.

<u>Conclusion</u>

Attorneys Dannenberg and Martin appear to have very deep seated issues with each other.  As lawyers they have used the legal system on several occasions as a way of venting their anger.  The court would recommend that both parties look within themselves and renew their individual efforts to be good and thoughtful neighbors.

Based on the foregoing, plaintiffs Paul and Anne Dannenberg's motion for summary judgment is granted.  Defendant James Martin's motion for summary judgment is also granted.  This case is dismissed.

Dated at Burlington, Vermont_____, 2005.

_____
Judge