David Glidden and Kathy J. Glidden v. Richard
Skinner and Eunice Skinner

[458 A.2d 1142]

No. 510-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed April 5, 1983

*Gensburg & Axelrod,* St. Johnsbury, for Plaintiffs-Appellees.

*Edwards C. O'Boyle, Jr.,* St. Johnsbury, for Defendants-Appellants.

**Billings, C.J.** This case arose out of plaintiffs' breach of contract action in connection with the proposed sale of defendants' farm. By their complaint plaintiffs sought compensatory damages on a theory of quantum meruit for the fair market value of labor, materials and equipment provided in anticipation of the proposed sale, and for punitive damages based on defendants' false and fraudulent misrepresentations to plaintiffs throughout the transactions.

After jury trial, plaintiffs recovered their compensatory damages on the quantum meruit count, as well as punitive damages on their claim of fraudulent misrepresentation. Defendants do not challenge the award of compensatory damages but argue that, on the record, the trial court erred in submitting the issue of punitive damages to the jury, and that such damages were not warranted by the evidence.

The following is the evidence before the jury, taken in the light most favorable to plaintiffs as the prevailing party. *Quechee Lakes Corp.* v. *Terrosi,* 141 Vt. 547, 552, 451 A.2d 1080, 1083 (1982) ; *Evarts* v. *Forte,* 135 Vt. 306, 307, 376 A.2d 766, 767 (1977). In 1978, defendants owned a dairy farm in Lunenburg, Vermont. In May of that year, they approached plaintiffs and asked them if they would be interested in purchasing the real estate and cattle thereon. Defendants, knowing that the plaintiffs lacked funds for a down payment, repeatedly represented that they owned the farm and cattle free and clear, and that defendants would finance the entire

purchase price should plaintiffs agree to the sale. In fact, the farm and its cattle were encumbered to an extent of at least $98,000. Nevertheless, on the basis of defendants' representations, plaintiffs orally agreed to purchase the farm.

At the time of these discussions, plaintiffs were living on a rented farm where they owned and milked their own cows. Plaintiff David Glidden also worked full time at a sawmill to provide additional family income. When plaintiffs agreed to buy defendants' farm, defendant Richard Skinner told plaintiffs that there was not enough room on the farm for plaintiffs' cows, and recommended that plaintiffs sell their cows. Defendant also told plaintiffs that his farm needed work for the upcoming summer, and that plaintiffs should commence working the farm immediately, although the closing was not to occur for several weeks. In reliance thereon, David Glidden quit his job at the sawmill, he and his wife sold their cattle, and they both commenced working the Skinner farm, he for fourteen hours a day, seven days a week, and she for six hours a day, five days a week. In addition, plaintiffs brought and used their own farm equipment to work defendants' farm.

As part of the sale, defendants orally agreed that the milk check for milk produced by the Skinner cows was to be transferred to plaintiffs as of June 1, 1978, and that defendants' lawyer would prepare the necessary documents to convey the farm on that date. However, neither the check transfer nor the conveyance occurred as agreed. For a period of six weeks, defendants repeatedly assured plaintiffs that there had been a mix-up at the creamery as to the milk check transfer, and that their lawyer had been too busy to prepare the legal documents for the conveyance.

As a result of these delays, plaintiffs grew suspicious. Then, in July of 1978, David Glidden had occasion to discover that forty fall heifers supposedly included in the sale to plaintiffs were actually only twelve to fifteen head of yearlings. At this point, David Glidden called defendants' attorney, and was shocked to learn that the attorney neither knew of the parties involved nor had been requested by defendants to prepare any sale documents. Their suspicions confirmed, plaintiffs left

the farm that same day, taking with them as much of their farm equipment as they could.

At trial, defendant Eunice Skinner admitted that as early as the end of May, 1978, she and her husband decided that plaintiffs were a poor credit risk, and on that basis determined not to go through with the financing of the farm. Defendants never told plaintiffs of this decision, but instead let them continue their arduous work on the farm for another five to six weeks. Moreover, defendant Richard Skinner admitted that he had never paid the plaintiffs any wages, nor reimbursed them for the use of their equipment or for their out-of-pocket expenses. He justified this nonpayment by indicating that plaintiffs had neither requested payment nor presented a bill. Finally, plaintiffs introduced evidence that, in the spring of 1977, defendants had gone through the same scenario with another farmer who wished to purchase defendants' farm, and that, on at least two subsequent occasions, defendants had agreed to sell their farm and then backed out of these agreements at the last minute.

Based on the above evidence, the jury awarded plaintiffs $6,656 in compensatory damages and $25,000 in punitive damages. Since defendants do not appeal the award of compensatory damages, we turn directly to their argument that there was insufficient evidence to justify submitting the issue of punitive damages to the jury. We disagree.

Punitive or exemplary damages may be awarded upon a proper showing that the act or acts relied upon are more than wrongful or unlawful, and amount to actual malice. "This may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights." *Shortle* v. *Central Vermont Public Service Corp.*, 137 Vt. 32, 33, 399 A.2d 517, 518 (1979) (citing *Sparrow* v. *Vermont Savings Bank*, 95 Vt. 29, 33, 112 A. 205, 207 (1921)). While such damages are generally not recoverable in actions for breach of contract, in certain extraordinary cases where the breach has the character of a willful and wanton or fraudulent tort, punitive damages may be allowed. *Clarendon Mobile Home Sales, Inc.* v. *Fitzgerald*, 135 Vt. 594, 596, 381 A.2d 1063, 1065 (1977) ; 5 A. Corbin, Con-

648

tracts § 1077, at 437–39 (1964). In such cases, punitive damages are awarded not as compensation to the sufferer, but "on account of the bad spirit and wrong intention" of the breachor. *Parker* v. *Hoefer,* 118 Vt. 1, 20, 100 A.2d 434, 446 (1953). See generally, 11 Williston on Contracts § 1340 (3d ed. 1968).

In the case at bar the facts disclosed more than mere bad motive; they revealed the necessary bad spirit and wrongful intention to support a claim of punitive damages. *Clarendon Mobile Home Sales, Inc.* v. *Fitzgerald, supra; Parker* v. *Hoefer, supra.* For these reasons, the trial court was more than justified in submitting the issue of punitive damages to the jury. Furthermore, as punitive damage awards are largely within the jury's discretion, *Pezzano* v. *Bonneau,* 133 Vt. 88, 91, 329 A.2d 659, 661 (1974); *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 155, 130 A. 758, 788 (1925), and as the award in this case is not " 'manifestly and grossly excessive,' " *Pezzano* v. *Bonneau, supra* (quoting *Gray* v. *Janicki,* 118 Vt. 49, 52, 99 A.2d 707, 711 (1953)), it is without error.

*Affirmed.*