Argued and submitted December 3, 1982, affirmed in part,
reversed in part and remanded June 8, Nordstrom's reconsideration
denied July 15, Smithson's reconsideration denied September 16,
petitions for review denied October 25, 1983 (295 Or 840)

# SMITHSON,
*Respondent,*
*v.*
# NORDSTROM, INC.,
*Appellant.*

## (A8009-05210; CA A23326)

664 P2d 1119

Glenn H. Prohaska, Portland, argued the cause for appellant. With him on the briefs was Day & Prohaska, Portland.

Charles J. Merten, Portland, argued the cause for respondent. With him on the brief was Karen L. Fink, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff, a former shoe saleswoman in one of defendant's department stores, brought this action for outrageous conduct, defamation and breach of contract for unpaid wages, all stemming from an interview in which she was questioned by store security personnel about a suspected theft. The jury returned verdicts for plaintiff on each of her claims, and defendant appeals. Of the issues raised, we consider only whether there was sufficient evidence to submit the claim for outrageous conduct to the jury and whether the trial court erroneously instructed the jury on that claim.[1]

Plaintiff was hired in September, 1978, for employment in defendant's Portland store. She was 19 years of age and, as shown on her application for employment, was blind in her right eye. On October 4, at the end of plaintiff's shift, two of defendant's security officers, Holste and Dawson, questioned plaintiff about whether she had stolen goods from defendant. Their suspicion was based on a statement given them by a cashier in the shoe department that plaintiff had violated certain store regulations regarding the purchase and exchange of merchandise by employes, including the suspicion that plaintiff had attempted to avoid paying the difference in price when she exchanged one pair of boots for a more expensive pair.

The evidence is viewed most favorably to plaintiff after a verdict in her favor. Evidence supporting the outrageous conduct claim consists largely of plaintiff's testimony. She was questioned in a small, windowless room for over three hours and thought that she was not free to leave. Dawson sat behind plaintiff on her right side where she could not see him. She was asked to sign a document stating that she was voluntarily waiving certain "rights," including the right to remain silent, and that anything she said could be used against her, but when she asked Holste to explain the document before she

---

[1] Although defendant appeals from the judgment on all three of plaintiff's claims, its assignments relating to the defamation and wage claims are without merit. Judgment on those claims is affirmed. We note that the judgment on the defamation claim, which establishes that subsequent publications by defendant that plaintiff had stolen merchandise were false, does not determine whether defendant reasonably believed that plaintiff had committed theft at the time she was interviewed, which is the relevant time involved in the outrageous conduct claim.

signed it, he told her only that it "doesn't mean anything" unless she had "done something wrong."

Holste demanded that plaintiff tell him "everything you think you've done wrong," indicating that he had evidence of wrongdoing in a folder in front of him. She offered an explanation for her conduct, which apparently contradicted some of the statements of the cashier, but which, if true, indicated that she had not attempted to steal merchandise. She and Holste argued about whether the way she had exchanged merchandise was the same as stealing, and both of them became angry. At some point, Holste stated that he would call the police and have her taken to jail if she did not sign a confession, and that the interrogation could last all night. Holste said that if she did sign it, she could "most likely" keep her job and that he would tell the store manager that it was a "misunderstanding." Thinking that she could avoid jail and keep her job, she signed the confession Holste had drawn up, but added at the bottom that she had not realized that what she had done was stealing. Two days later plaintiff was fired by the store manager.

■    *Hall v. The May Department Stores, Inc.,* 292 Or 131, 637 P2d 126 (1981), also involved the interrogation of a saleswoman suspected of theft by store security personnel. There, the plaintiff was selected for questioning because a security system that matched the days when there was a shortage of more than $10 at a particular cash register with the days when individual salespeople were using the register showed a higher correlation as to her than to other employes. During the questioning of the plaintiff, the security officer yelled at her, slapped his hand on a desk, pointed at papers that he said proved that she had been stealing and told her that if she did not confess he would secure a warrant for her arrest for embezzlement. The court stated that the jury could find that the security officer did not have "proof" of the plaintiff's guilt or evidence sufficient to have her arrested and that

> "* * * his insistence that he had 'proof,' coupled with offering the employee a choice between accepting his 'help' and a threat of arrest and prosecution, were a deliberate and systematic tactic to threaten and frighten the employee into a confession." 292 Or at 141.

The court said that the questioning of an employe about suspected wrongdoing, even with accusations and raised voices,

was not sufficient to support a finding of outrageous conduct. The court went on to say that

"'* * * an additional element appears when an employee is subjected to severe mental and emotional distress, not as an incidental effect of an unpleasant confrontation, but intentionally as a cold-blooded tactic of interrogation upon scanty evidence." 292 Or at 141-42.

With evidence of that additional element, which was present in *Hall,* a jury could determine that the defendant's conduct "went beyond the outer bounds of socially tolerable employer practices." 292 Or 142.

■ Here, the jury could also find that plaintiff was threatened with criminal prosecution if she did not sign a confession, and could infer that the security officers did not reasonably believe that they had sufficient evidence of her guilt to charge her with theft. If so, the jury could determine that such conduct, combined with other aspects of the interrogation, such as its duration, exceeded the bounds of socially tolerable employer practices. There was, therefore, sufficient evidence to go to the jury on that cause of action.

■ Defendant contends, however, that an instruction permitted the jury to find defendant liable even if its conduct was socially acceptable, contrary to the rule in *Hall.* The court gave the following instruction:

"Now, in order for the plaintiff to prevail on her claim of Outrageous Conduct, she must prove by a preponderance of the evidence each of the following, one, that the defendant, Nordstrom Corporation, through its agents intended to inflict severe mental stress upon her; two, that the defendant's agent in fact caused her to suffer severe mental or emotional distress; three, that the means by which the distress was inflicted exceeded the limits of socially tolerable conduct.

"Now, you are instructed that conduct which exceeds any reasonable limit of socially tolerable conduct may include but is not limited to the following: When a person compels or induces another person to engage in conduct from which he has a legal right to abstain or to abstain from engaging in conduct in which he has a legal right to engage by means of instilling in the person a fear that if the demand is not complied with the actor or another will accuse some person of a crime or cause criminal charges to be instituted against him or expose a secret or publicize an asserted fact, whether true or false,

intending to subject some person to hatred, contempt or ridicule or inflict any other harm which would not benefit the actor.

"Another example of conduct which may exceed any reasonable limit of socially tolerable conduct is when a person with intent to defraud or injure another obtains the signature of a person to a written instrument by knowingly misrepresenting any fact or when a person with intent to defraud or injure another or to acquire a substantial benefit obtains by means of fraud, deceit or subterfuge the execution of a written instrument affecting or purporting to affect a pecuniary interest of any person.

"Now, under Oregon law whether or not conduct exceeds the limits of social toleration is a question of fact for you to determine from all the facts and circumstances of the case."

The first paragraph of the instruction is the general definition of outrageous conduct and is correct. The second paragraph, which defendant challenges, appears to be an attempt by the trial court to effectuate the Supreme Court's statement in *Hall* that the general definition gives little content to the tort and that it might be helpful if a trial court explained the "nature of the social judgment required of jurors * * * in the context of the type of case before them" by including in the explanation of the tort "some phrases indicating the limits of its reach." 292 Or at 143-44.

Here, the trial court gave examples of conduct which the jury could consider to be outrageous and which resembled defendant's alleged conduct. The first example was taken almost verbatim from the criminal coercion statute, ORS 163.275, which, defendant points out, was declared unconstitutional in *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), because the statute was overly broad in that it encompassed constitutionally protected conduct as well as conduct that could be lawfully prohibited. Although the *Robertson* decision does not affect our view of the challenged instruction[2] — an act need not be criminal to be outrageous — a similar problem is presented, because the language of the instruction encompasses both actionable and nonactionable conduct.

---

[2] Because the trial court felt that, if defendant's conduct constituted a crime, it would also constitute outrageous conduct, the *Robertson* decision, had it been available, may have persuaded the trial judge that the challenged instruction ought not be given. Whether all criminal conduct is *per se* outrageous is at least questionable.

That is, although the jury could find defendant liable if it threatened prosecution "upon scanty evidence," the instruction informed the jury that it could find defendant liable if it had merely told plaintiff that it would turn over to police the matter of her suspected stealing (instilling fear of criminal charges) if she did not sign a confession (inducing conduct from which she has a legal right to abstain). Such conduct, without more, is not socially intolerable; in fact, if defendant reasonably believed the threatened charge to be true, that would be a defense (ORS 163.285[3]) to a charge of coercion under ORS 163.275.

We conclude that it was error to give the challenged portion of the instruction. Because we cannot be certain that the jury was not misled, the error was prejudicial, and a new trial on the outrageous conduct claim is necessary.

Affirmed in part; reversed in part, and remanded.

---

[3] ORS 163.285 provides:

"In any prosecution for coercion committed by instilling in the victim a fear that he or another person would be charged with a crime, it is a defense that the defendant reasonably believed the threatened charge to be true and that his sole purpose was to compel or induce the victim to take reasonable action to make good the wrong which was the subject of the threatened charge."