## Charles Crump, Sr. v. P & C Food Markets, Inc.

[576 A.2d 441]

No. 86–354

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed May 4, 1990

*Plante, Richards, Hanley & Gerety, P.C.,* White River Junction, for Plaintiff-Appellee.

*Robert S. DiPalma* of *Paul, Frank & Collins, Inc.,* Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from a jury verdict in favor of plaintiff on grounds of defamation and intentional infliction of emotional distress. We affirm.

The present action arose after defendant dismissed plaintiff as an employee in August 1983. Plaintiff had been employed by defendant for eighteen years and held the position of head receiver for dry goods at defendant's Vermont distribution center at the time of his dismissal. Plaintiff's dismissal followed an incident in which he placed some rejected merchandise on an outgoing truck, intending to pick it up later for his personal use.

One of plaintiff's responsibilities was to reject merchandise delivered to the facility if it was either damaged or had not been ordered by defendant. Truckers would at times refuse to take rejected merchandise back onto their trucks, and would leave it at the distribution center, where it was either salvaged and placed in inventory, or given to the employees to take home for their own use. The incident which triggered plaintiff's dismissal involved two rejected cases of merchandise, one of breakfast cereal and one of toaster pastries. Defendant had no obligation to pay for these rejected cases. The independent trucker to whom they were returned declined to receive them back onto her truck and remove them. Instead, she offered them to plaintiff, after asking if he had any grandchildren, and he accepted them. Plaintiff offered to share them with some

fellow employees and then placed them by his desk to take them home.

At trial, plaintiff argued that once the merchandise was rejected and returned to the independent trucker, it became the trucker's property who in turn could give it to him. Therefore, plaintiff's later removal of it from defendant's premises was not theft. Defendant contended that it did not allow employees to remove merchandise delivered to its facility in that manner, or to receive gratuities from customers or distributors, and that even if defendant never paid for the merchandise, any such removal constituted theft.

Defendant's evidence showed, and plaintiff admitted, that he had failed to follow defendant's prescribed procedures for such rejected merchandise in two respects. First, plaintiff did not place the rejected merchandise in defendant's salvage area for it to be packaged for resale or distribution among the warehouse employees; second, plaintiff failed to obtain a gate pass from either of two supervisors, but instead, in their absence, issued one himself. Plaintiff did not deny that he violated company procedures for accepting gifts of unwanted merchandise from independent truckers. But the basis of plaintiff's defamation claim was that defendant wrongly characterized him as a thief. Plaintiff argued that because the trucker gave the rejected merchandise to the plaintiff, his acceptance and removal of it without following the prescribed company procedures could not have constituted theft.

Plaintiff's evidence showed that he was called a thief at a meeting held at the distribution center a few days after the incident, and that in two written reports prepared subsequent to that meeting, he was characterized as a problem employee and his actions were referred to as employee theft. Three representatives of defendant participated in that meeting: the director of transportation and warehousing; a loss prevention specialist; and the director of loss prevention and safety from defendant's Syracuse office. Written reports submitted as exhibits at trial were prepared about a month and a half after the meeting by the loss prevention specialist who had attended the meeting, and by another loss prevention specialist who had

originated the investigation and then had gone on vacation. These reports were distributed by their authors to the two directors who had attended the meeting and to three other representatives of defendant: the vice-president who was the general manager of defendant's New England division, defendant's director of employee relations, and the director of store operations in defendant's New England division. There was disputed evidence that a report was also made orally to the security manager for the trucking firm whose driver had taken the merchandise out of defendant's facility, and that the incident was discussed with the driver and another employee of that trucking firm. Plaintiff also presented evidence on the effect of the incident on his social life, his health, his personal and family life, and his reputation in the community.

The basis for plaintiff's claim of intentional infliction of emotional distress was the nature of the meeting and the manner in which he was fired: that the meeting was called without prior notice to him; that it went on for three hours without an opportunity for him to have lunch at his normal time; that he was badgered by repeated requests to sign a statement, and to add material to the statement he had already signed; that he feared that his failure to sign a statement would adversely affect the driver of the outgoing truck; that directly after this meeting he was told to "clean out his desk"; and that he was fired summarily after eighteen years of service.

Plaintiff brought the present action seeking damages for defamation, intentional infliction of emotional distress, unlawful employment practices and breach of contract. As plaintiff is black and was 57 at the time of his dismissal, his count for unlawful employment practices included claims of discrimination on the basis of age and race, as well as termination without cause. Before trial, the trial court granted defendant's motion for summary judgment on the issue of termination without cause and denied the motion with respect to intentional infliction of emotional distress and employment discrimination on the basis of age and race. The trial court partially granted defendant's summary judgment motion as to the defamation count, ruling that the testimony given by defendant's em-

ployees at plaintiff's unemployment compensation hearing was absolutely privileged.

At trial, defendant moved for a directed verdict at the close of the plaintiff's case, but did not renew the motion until after the charge to the jury, just before the jury left to deliberate. The motion was denied at both times. The jury returned a verdict for the plaintiff on the defamation and intentional infliction of emotional distress claims and awarded him $19,000 in compensatory and $25,000 in punitive damages for each claim. Defendant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The court denied defendant's motions and the present appeal followed.

## I. *Waiver*

Plaintiff argues that defendant should be precluded from raising any of its points on appeal because defendant failed to renew its motion for directed verdict at the close of all the evidence, which is a prerequisite for making a motion for judgment notwithstanding the verdict. See *Lemnah v. American Breeders Service, Inc.*, 144 Vt. 568, 571, 482 A.2d 700, 702 (1984). Defendant moved for a directed verdict at the close of plaintiff's case, but failed to renew the motion at the close of its own case. The trial court allowed defendant to renew the motion after it had charged the jury and before the jury began deliberation.

While this procedure is not preferred, it is not error. A purpose of the requirement that a movant renew a motion for directed verdict at the close of all the evidence is to give the nonmoving party an opportunity to cure the defects in proof that might otherwise preclude the case from going to the jury. *Maynard v. Travelers Insurance Co.*, 149 Vt. 158, 162, 540 A.2d 1032, 1034 (1987); *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1556 (7th Cir. 1987). Further, the rule is designed to prevent a litigant from gambling on winning a favorable verdict and yet retaining a challenge to the sufficiency of the evidence on appeal. *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024–25 (5th Cir. 1979). The timing here afforded the trial court the opportunity to properly determine whether sufficient

evidence existed for the issues to be decided by the jury and gave the nonmoving party the opportunity to attempt to rectify any deficiencies in proof.

## II. *Defamation*

Defendant challenges the trial court's denial of its motion for judgment notwithstanding the verdict on the defamation count, claiming .there was insufficient proof at trial of the elements of the tort. Defendant argues that there was insufficient evidence that the defamatory statements were false, that defendant acted with the malice necessary to overcome the conditional privilege, that the statements were made in a negligent fashion, and that the defamatory statements were the proximate cause of plaintiff's injuries.

As we have recently noted, *Ryan v. Herald Association, Inc.*, 152 Vt. 275, 277, 566 A.2d 1316, 1317–18 (1989), the elements of a defamation action in Vermont are:

> (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages.

(quoting *Lent v. Huntoon*, 143 Vt. 539, 546–47, 470 A.2d 1162, 1168 (1983) (footnote omitted)); see *Stone v. Banner Publishing Corp.*, 677 F. Supp. 242, 245 (D. Vt. 1988).

Because the common-law privileges have not necessarily been adequate to protect First Amendment values, federal constitutional jurisprudence has modified the elements of defamation, at least in cases in which the plaintiff is in some way a "public figure," see, e.g., *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), or the material published is "of public concern," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Ryan v. Herald Association, Inc.*, 152 Vt. at 280 n.2, 566 A.2d at 1319 n.2; or, possibly, if the defendant is engaged in the dissemination of information to subscribers or the general public, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749

(1985). *Gertz* struck one balance between the competing concerns of protecting First Amendment values and compensating defamed individuals. But as we noted in *Ryan v. Herald Association, Inc.*, 152 Vt. at 279 n.1, 566 A.2d at 1317 n.1, where the defamatory statements are made by private individuals to private individuals, "the First Amendment interest in protecting the defendant's speech is arguably less pressing, and the resulting accommodation might be different." Unlike *Ryan*, which involved a matter of public concern and a defendant belonging to the "institutional media," the case at hand involves statements made privately in the employment context about an employee to agents of the employer and several other persons. However, we need not establish whether plaintiff must prove merely "some negligence" or a greater degree of fault in a "private" defamation case after *Greenmoss Builders, Inc.*, 472 U.S. at 757–61, because here, defendant concededly enjoys a conditional privilege for intracorporate communications to protect its legitimate business interests. To prevail, plaintiff must show malice or abuse of the privilege sufficient to defeat it. *Lent v. Huntoon*, 143 Vt. at 549, 420 A.2d at 1169 (malice); Restatement (Second) of Torts §§ 599–605A (1977) (abuse of privilege).

■■ In reviewing the denial of motions for judgment notwithstanding the verdict, we must assess the elements of defamation by viewing the evidence in the light most favorable to the prevailing party, excluding the effect of any modifying evidence. *Westchester Fire Ins. Co. v. Deuso*, 146 Vt. 424, 426, 505 A.2d 666, 667 (1985). A judgment notwithstanding the verdict is improper if the record contains any evidence that fairly and reasonably supports the verdict. *Kinzer v. Degler Corp.*, 145 Vt. 410, 413, 491 A.2d 1017, 1019 (1985). Viewed in that light, we discuss in turn each element of defamation put in issue by the parties.

■ With regard to the first element, plaintiff presented evidence sufficient to support the jury verdict that the statements were false and defamatory. A review of the record shows evidence that plaintiff's actions, while violating defendant's procedures, could fairly and reasonably be interpreted by the jury as

not constituting theft, and that plaintiff's past employment record did not warrant his being called a "problem employee."

With respect to the second, third, and fourth elements, the trial court found as a matter of law that defendant enjoyed a conditional privilege for the protection of its legitimate business interests. See, e.g., *Lent v. Huntoon*, 143 Vt. at 548–49, 470 A.2d at 1169 (holding conditional privilege applicable in Vermont). Plaintiff presented evidence that defendant acted with malice or abused its conditional privilege sufficient for the jury to find that the privilege had been overcome. The jury was properly instructed that plaintiff had to prove malice to defeat the privilege by clear and convincing evidence.

■■■ Under Vermont law, a plaintiff must show one of two types of malice in order to overcome the conditional privilege protecting legitimate business interests. *Lent v. Huntoon*, 143 Vt. at 549, 470 A.2d at 1169. For the purposes of clarity in this discussion,[1] we will use the following full-phrase definitions for each type: "knowledge of the statement's falsity or with reckless disregard of its truth," *id.*, or "conduct manifesting personal ill will, reckless or wanton disregard of plaintiff's rights, or carried out under circumstances evidencing insult or oppression," *id.* at 550, 470 A.2d at 1170. The first type of malice may be inferred.

---

[1] We note that much confusion has arisen over the terminology applied to the malice requirement in its various contexts: courts have used the term "actual malice" in reference to both types of malice. Compare *New York Times Co. v. Sullivan*, 376 U.S. at 280 ("'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not") with *Lent v. Huntoon*, 143 Vt. at 550, 470 A.2d at 1170 ("punitive damages may be awarded on a showing of actual malice . . . shown by conduct manifesting personal ill will or . . . circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights"); see also *Ryan v. Herald Ass'n*, 152 Vt. at 281 n.5, 566 A.2d at 1320 n.5.

Courts have also termed the first type of malice as "constitutional" malice. See *Gertz v. Robert Welch, Inc.*, 418 U.S. at 342; *Ryan v. Herald Ass'n*, 152 Vt. at 280, 566 A.2d at 1319. Moreover, the terms "simple malice" and "common-law malice," *Ryan v. Herald Ass'n*, 152 Vt. at 281, 566 A.2d at 1319–20, as well as "express malice," *Calero v. Del Chemical Corp.*, 68 Wis. 2d 487, 499–500, 228 N.W.2d 737, 748 (1975), are used interchangeably in reference to the second type of malice.

 Plaintiff presented evidence showing both types of malice. The jury could have found that the merchandise did not belong to defendant and therefore that defendant's characterization of the incident as theft evidenced a reckless disregard both for the truth and for plaintiff's rights. See, e.g., *Litman v. Massachusetts Mutual Life Ins. Co.*, 739 F.2d 1549, 1561 (11th Cir. 1984) (defendant employer's statements to former colleagues of discharged employee were not privileged where evidence supported jury finding that statements were made wilfully, maliciously, and with reckless disregard of plaintiff's rights); *Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 376, 494 N.E.2d 70, 72–73, 502 N.Y.S.2d 965, 968 (1986); *Worley v. Oregon Physicians Service*, 69 Or. App. 241, 245, 686 P.2d 404, 407–08 (1984) (en banc); *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 152, 334 S.E.2d 846, 853 (1985). The jury could also have interpreted the circumstances of the meeting as "conduct evidencing oppression." Moreover, plaintiff's showing that the statements went to people in the trucking company, outside defendant's organization, who were therefore not proper persons to receive the communications, is evidence from which the jury could have found abuse of the privilege. See, e.g., *Gibby v. Murphy*, 73 N.C. App. 128, 132–33, 325 S.E.2d 673, 676 (1985); Restatement (Second) of Torts § 604 (excessive publication).

Defendant next argues that plaintiff did not present sufficient evidence on the fifth and sixth elements to warrant compensatory damages by failing to show actual harm proximately caused by the defamatory statements. We agree that plaintiff failed to prove that the defamation, rather than his discharge from employment, caused his inability to obtain new employment, or caused the changed attitudes shown towards him by his former friends, associates and members of the community. Plaintiff counters both that false accusation of theft is actionable per se, and that he presented sufficient evidence of injury caused by the defamation.

 False accusation of theft is actionable per se. As the Court noted in *Lent v. Huntoon*, the law of defamation in Ver-

mont, with a few exceptions,[2] "must be gleaned from nineteenth century case law." 143 Vt. at 545, 470 A.2d at 1167. The plurality decision in *Greenmoss Builders, Inc.*, 472 U.S. at 749, has been characterized as "restor[ing] the common law of defamation where the defamatory statement concerns a private issue, at least as far as presumed and punitive damages are concerned." Comment, *American Defamation Law: From Sullivan, Through Greenmoss, and Beyond*, 48 Ohio St. L. J. 513, 532 (1987); see 5 M. Minzer, J. Nates, C. Kimball and D. Axelrod, Damages in Tort Actions § 45.21[2][i], at 45–50 (1986).

*Lent v. Huntoon* confirmed the continuing validity of "slander per se" in Vermont. Under this doctrine, certain types of false statements, including false accusation of theft, see *Sabin v. Angell*, 46 Vt. 740, 745 (1874); *Redway v. Gray*, 31 Vt. 292, 297–98 (1858), constitute slander without requiring proof of special damages. Plaintiff bore the burden of introducing evidence of actual harm resulting from being called a thief, *Lent v. Huntoon*, 143 Vt. at 549, 470 A.2d at 1169, and he did put forth sufficient evidence of actual harm to himself for the case to go to the jury on the issue of damages for defamation. In addition to the emotional harm he suffered during the incident, plaintiff showed that he had problems sleeping, experienced a loss of appetite, developed a temporary drinking problem, and that his relationship with his wife and his children deteriorated. Such cases may go to the jury, as did this case, on broad jury instructions. See R. Sack, Libel, Slander, and Related Problems § VII.2.4, at 348–49 (1980).

We conclude that plaintiff produced sufficient evidence at trial to go to the jury on each element of defamation, and that the trial court did not abuse its discretion by denying defendant's motion for judgment notwithstanding the verdict.

---

[2] Two limited constitutional areas, one involving public figures, *Lent v. Huntoon*, 143 Vt. at 545, 470 A.2d at 1167, and another regarding matters of public concern disseminated to subscribers or the general public, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. at 762, have developed more recently.

### III. *Intentional Infliction of Emotional Distress*

Defendant next challenges the trial court's denial of its motion for judgment notwithstanding the verdict on the intentional infliction of emotional distress claim because there was insufficient proof that defendant's conduct was extreme and outrageous, that plaintiff's emotional distress was severe, and that defendant's actions were the proximate cause of injuries received.

■ Vermont recognizes the tort of intentional infliction of emotional distress. To prevail, plaintiff must demonstrate "'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct.'" *Birkenhead v. Coombs*, 143 Vt. 167, 174–75, 465 A.2d 244, 247 (1983) (quoting *Sheltra v. Smith*, 136 Vt. 472, 476, 392 A.2d 431, 433 (1978)). We address these elements again excluding modifying evidence presented by defendant.

■ We agree with defendant that the mere termination of employment will not support a claim for intentional infliction of emotional distress. However, if the manner of termination evinces circumstances of oppressive conduct and abuse of a position of authority vis-à-vis plaintiff, it may provide grounds for the tort action. See, e.g., *Gordon v. Matthew Bender & Co.*, 562 F. Supp. 1286, 1299 (N.D. Ill. 1983) (employer's motion to dismiss denied where employee alleged that employer maliciously terminated him for failure to meet sales goals); *Smithson v. Nordstrom, Inc.*, 63 Or. App. 423, 425–27, 664 P.2d 1119, 1120–21 (1983) (plaintiff produced sufficient evidence for case to go to jury where employer did not reasonably believe there was sufficient evidence to charge employee with theft but nevertheless interrogated her for three hours and threatened her with criminal prosecution if she did not sign confession). Plaintiff's evidence showed that defendant's representative summoned plaintiff to a lengthy meeting without notice, continued the meeting without a break for rest or food, repeatedly badgered him to amend and sign a statement, and that plaintiff did not

feel free to leave the meeting. Immediately after the meeting, defendant's representative directed plaintiff to clean out his desk, a summary dismissal after eighteen years of service.

 We conclude that plaintiff produced sufficient evidence at trial for the case to go to the jury on the elements of intentional infliction of emotional distress, and that the trial court did not abuse its discretion by denying defendant's motion for judgment notwithstanding the verdict.

## IV. *Punitive Damages*

Defendant argues that the trial court erred by failing to grant its motion for judgment notwithstanding the verdict on the jury's award of punitive damages, claiming that there was insufficient proof that defendant's conduct manifested personal ill will, evidenced insult or oppression, or showed a reckless or wanton disregard of plaintiff's rights. Plaintiff argues that defendant waived this issue on appeal by not raising it below, but our review of the transcript reveals that defendant raised it in both its motion for directed verdict and its motion for judgment notwithstanding the verdict, and therefore, preserved the issue.

 The same evidence of malice—i.e., conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights—which supported the jury verdicts on both counts was also sufficient to allow the jury to impose punitive or exemplary damages on both counts. *Coty v. Ramsey Assocs.*, 149 Vt. 451, 464, 546 A.2d 196, 205 (1988); cf. *Wheeler v. Central Vt. Medical Center, Inc.*, 155 Vt. 85, 96, 582 A.2d 165, 171 (1989). The jury could have fairly and reasonably concluded that the conduct of defendant's representatives manifested personal ill will, was carried out under circumstances of insult or oppression, or manifested a reckless and wanton disregard for plaintiff's rights. *Phillips v. Aetna Life Ins. Co.*, 473 F. Supp. 984, 990 (D. Vt. 1979); *Crabbe v. Veve Associates*, 150 Vt. 53, 58, 549 A.2d 1045, 1049 (1988); *Appropriate Technology Corp. v. Palma*, 146 Vt. 643, 647, 508 A.2d 724, 726–27 (1986). Once evidence was presented which

could support that finding by the jury, the imposition of punitive damages was within the discretion of the jury. *Pezzano v. Bonneau,* 133 Vt. 88, 91, 329 A.2d 659, 661 (1974); *Woodhouse v. Woodhouse,* 99 Vt. 91, 155, 130 A. 758, 788 (1925).

### V. *Motion for New Trial*

██ ██ Defendant argues that the trial court erred in failing to grant its motion for a new trial, claiming that the jury disregarded the reasonable and substan ial evidence, that the evidence does not support the verdict, and that the damages awarded were excessive and bore no relation to any harm established by plaintiff. When reviewing a trial court's denial of a motion for new trial, we consider whether the denial amounted to an abuse of discretion. *Costa v. Volkswagen of America,* 150 Vt. 213, 217, 551 A.2d 1196, 1200 (1988); *Lent v. Huntoon,* 143 Vt. at 552, 470 A.2d at 1171. Based on our review of the record as explained above in our discussion of the motions for judgment notwithstanding the verdict, we conclude that the jury had before it sufficient evidence to reach the verdict it reached. Therefore, we cannot find the trial court's decision to decline to overturn the jury's award of compensatory damages to be an abuse of discretion.

██ Moreover, the amount of the punitive damages need bear no particular relationship to the amount of compensatory damages. *Appropriate Technology Corp. v. Palma,* 146 Vt. at 648, 508 A.2d at 727. An award of punitive damages may stand as long as the evidence supports the showing of malice. *Ryan v. Herald Association,* 152 Vt. at 281, 566 A.2d at 1319. Since we conclude that the jury had evidence from which it could conclude that defendant acted with malice, we affirm the punitive damages award. We do not find the punitive damages awarded in this case to be "manifestly and grossly excessive." *Coty v. Ramsey Assocs.,* 149 Vt. at 466–67, 546 A.2d at 206; see *Glidden v. Skinner,* 142 Vt. 644, 648, 458 A.2d 1142, 1145 (1983).

*Affirmed.*