## Winston Ainsworth v. Franklin County Cheese Corp.

[592 A.2d 871]

No. 89-325

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed April 12, 1991

*John J. Bergeron* of *Bergeron, Paradis, Coombs & Fitzpatrick* and *Michael Marks* of *Lisman & Lisman* (Of Counsel), Burlington, for Plaintiff-Appellee.

*Paul D. Sheehey* and *David T. Austin* of *Sheehey Brue Gray & Furlong*, Burlington, for Defendant-Appellant.

**Dooley, J.** This is an appeal from a jury verdict against defendant Franklin County Cheese Corporation for nonpayment of vested severance benefits, awarding plaintiff Winston Ainsworth $316,050 in compensatory damages and $200,000 in punitive damages. Defendant raises four claims of error: (1) the trial court erred in submitting to the jury the question of whether plaintiff was discharged without cause; (2) punitive damages cannot be awarded as a matter of law in a contract action without proof of an independent malicious tort; (3) even

if proof of an independent tort is not required, the evidence failed to support an award of punitive damages; and (4) the trial court's instructions on punitive damages prejudiced the general jury verdict. We affirm.

Defendant hired plaintiff in 1973 to manage defendant's cheese manufacturing plant in Enosburg, Vermont. In addition to overseeing day-to-day operations, plaintiff planned and supervised a major plant renovation, improved quality control programs, and developed several new products. During plaintiff's thirteen-year tenure, the company experienced substantial growth, including a four-fold increase in assets. In 1984, plaintiff and defendant entered into a written employment contract. The contract provided for one-year terms, automatically renewable unless one party chose to terminate the contract upon thirty-days' notice to the other. Under the agreement, plaintiff was paid an annual bonus of fifteen percent of defendant's pretax profits from the prior year.

The contract contained a number of severance and termination clauses that are central to this dispute. Section 4.02 provided for a severance allowance if plaintiff were terminated without cause or for disability or if plaintiff died. The severance allowance was keyed to defendant's profits, but was reduced to the extent his employment, as of the termination date, had gone on for less than twenty years. The sections critical to the dispute involve termination without cause and termination for cause. They provided:

> *Section 4.03 Termination without Cause*—Without cause, the Employer may terminate his Employment at any time upon thirty (30) days' written notice to the Employee. Without cause, the Employee may terminate his Employment at any time upon thirty (30) days' written notice to the Employer.
>
> *Section 4.05 Termination for Cause*—With cause, the Employer may terminate his Employment at any time by providing written notice of the reasons therefor to the Employee. In such an event the Employee shall not be entitled to receive the severance allowance referred to in Section 4.02 herein. However, the Employee shall be entitled to receive his accrued pension benefits.

The parties differ substantially in their accounts of their relationship during the period following the adoption of the employment contract. Plaintiff testified that defendant's president and principal stockholder, Walter Hildebrandt, expressed continued satisfaction with plaintiff's performance and gave no indication that plaintiff's job was in jeopardy. Plaintiff acknowledged that Hildebrandt was "frustrated" with some aspects of the plant's operations, but attributed this sentiment to factors unrelated to plaintiff's performance. Hildebrandt, on the other hand, testified that he had complained to plaintiff on several occasions and had implicitly warned plaintiff of the possibility of his dismissal. Hildebrandt conceded that he had proposed the employment agreement to reward plaintiff for his excellent work and to ensure that plaintiff stayed with the company, and that plaintiff was his most valued employee from 1973 to 1986.

During a telephone conversation on August 25, 1986, Hildebrandt informed plaintiff that his employment would be terminated. Hildebrandt provided no explanation for his decision, but offered plaintiff the option of resigning or being fired. Plaintiff asked for time to consider this choice. The following day, plaintiff received a letter from Hildebrandt which stated:

> This is to confirm our conversation of today. With regret I accept your notice of termination from employment effective 30 days from today.

At no time during the thirty-day post-notice period did defendant provide plaintiff reasons for his dismissal. Plaintiff did not question defendant's decision and, at Hildebrandt's request, proceeded to train a replacement and to update his files on his research and development programs. According to plaintiff, when he inquired as to whether severance benefits would commence in late 1986 or early 1987, Hildebrandt responded that he "hadn't gotten that far yet."

On October 2, 1986, plaintiff received a letter from defendant, dated September 30, 1986 and signed by Hildebrandt, which stated:

> This letter is forwarded to you for the purpose of providing to you written notice of the reasons why I requested that you terminate your employment with Franklin County Cheese Corp.

Your employment was terminated for cause. The reasons which underlie this decision include but are not limited to the following:

Failure to follow my written and verbal directions such as my memo to you dated October 19, 1985.

Failure to follow the Company Operations Manual.

Lest there be any doubt, this notice is provided to you pursuant to the provisions of Section 4.05 [Termination for Cause] of the Employment Agreement between you and Franklin County Cheese Corp.

Because defendant asserted that plaintiff was fired for cause, it refused to provide the severance allowance provided for in § 4.02 of the contract.

Plaintiff brought suit, alleging that defendant had breached its duty to provide a severance allowance under the employment contract. He alleged that his dismissal was actually without cause and the September 30 letter contained false allegations promulgated solely to deprive him of his vested severance allowance. He further alleged that no cause existed to dismiss him. This appeal followed a jury verdict in favor of plaintiff.

Defendant's first argument is that there was no credible evidence to support a finding that plaintiff was dismissed without cause. Defendant's position, in essence, is that it should have received a directed verdict at the close of plaintiff's case and a judgment notwithstanding the verdict after the verdict since plaintiff made no showing to establish defendant's liability. In evaluating a denial of a directed verdict, we must examine the evidence in the light most favorable to the opposing party and ignore the effect of modifying evidence. See *Silva v. Stevens*, 156 Vt. 94, 101, 589 A.2d 852, 856 (1991). If there is any evidence fairly and reasonably supporting the opposing party's claim, it is proper to submit it to the jury. See *id.* at 101–02, 589 A.2d at 856.

Plaintiff made two interrelated claims in this case: (1) even if cause for dismissal existed, plaintiff was terminated under § 4.03 of the contract, without cause, and was entitled to the severance allowance; and (2) no cause existed for termination under § 4.05. Defendant's motion, and its brief here, attack the

second ground, asserting that it was undisputed that cause existed under the proper legal test. We need not reach that argument because it is clear that evidence existed to support denial of the motion on the first theory.

It is very common in employment disputes for the court to have to determine the reasons or motives that form the basis for an employer's action. See, e.g., *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 716 (1983) (in employment discrimination case, court must determine employer's motive); *Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (public employee who claimed he was not rehired because of his exercise of his right of free speech must show speech was a motivating factor in the dismissal; employer can prevail on showing that employee would not have been rehired despite the speech). A comparable situation was present in the leading case of *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), where the Supreme Court of Michigan found that statements of company policy and procedure were enforceable so that an employee could be fired only for cause. On the proof necessary for the employee to prevail, the court explained:

> Where the employer alleges that the employee was discharged for one reason—excessive tardiness—and the employee presents evidence that he was really discharged for another reason—because he was making too much money in commissions—the question also is one of fact for the jury. The jury is always permitted to determine the employer's true reason for discharging the employee.

*Id.* at 622, 292 N.W.2d at 896 (footnote omitted).

■ As in *Toussaint*, the jury was permitted here to find the true reason for plaintiff's dismissal. The evidence on the reason for plaintiff's dismissal was in conflict. Hildebrandt initially offered plaintiff the option of resignation or dismissal and provided no explanation for the termination until after the thirty-day notice period. If plaintiff were believed, defendant had virtually no grounds for his action, and he failed to give any real warning. Only when it was brought to Hildebrant's attention that defendant might owe a severance allowance under the contract did he create the grounds. Plaintiff offered an alternative

explanation for his termination. We conclude that the evidence was more than adequate for the jury to conclude that the statement of grounds was a pretext and that plaintiff was really terminated under § 4.03 of the contract. There is no error in the denial of the motions for a directed verdict or a judgment notwithstanding the verdict.

Second, defendant argues that an award of punitive damages was inappropriate as a matter of law. Defendant's argument is two-fold: (1) punitive damages are not available in contract cases absent evidence of each element of an independent tort; and (2) if damages are appropriate in this type of action, they were not warranted here because there was no evidence of actual malice on the part of defendant.

As defendant correctly points out, several states do not allow punitive damages in a contract action unless there is evidence sufficient to establish all of the elements of an independent, wilful tort. See, e.g., *American Int'l Land Corp. v. Hanna*, 323 So. 2d 567, 569-70 (Fla. 1975) (independent malicious tort must be specifically pled); *Kamler Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514, 518 (1983) (requiring "proof of an independent, wilful tort, beyond the mere breach of a duty imposed by contract, as a predicate for an award of punitive damages"); cf. *Canada Dry Corp. v. Nehi Beverage Co.*, 723 F.2d 512, 524 (7th Cir. 1983) (applying Indiana law; punitive damages allowed in absence of independent tort only where such damages will serve the public interest by deterring future wrongdoers). Clearly, there is some disagreement among jurisdictions "regarding just when punitive damages ought to be available in a contract action." See 5 A. Corbin, Corbin on Contracts § 1077, at 161 (1991 Supp.).

■ Vermont, however, has consistently followed a different rule that punitive damages are appropriate in contract actions "in certain extraordinary cases where the breach *has the character of* a willful and wanton or fraudulent tort." *Glidden v. Skinner*, 142 Vt. 644, 647, 458 A.2d 1142, 1144 (1983) (emphasis added); see also *Appropriate Technology Corp. v. Palma*, 146 Vt. 643, 648, 508 A.2d 724, 727 (1986) (breaching party's conduct "takes on the character of a willful or fraudulent tort rendering the corporation liable for punitive damages"); *Hilder v. St. Peter*, 144 Vt. 150, 163, 478 A.2d 202, 210 (1984) ("Although

punitive damages are generally not recoverable in actions for breach of contract, there are cases in which the breach is of such a willful and wanton or fraudulent nature as to make appropriate the award of exemplary damages."). We see no reason to depart from this approach.

Under plaintiff's theory, Hildebrandt fabricated grounds for termination solely to deny plaintiff his severance allowance. Further, he did so only after plaintiff had worked in good faith to finish up his work and turn over his position to a new manager. This is the type of conduct that has given rise to an award of punitive damages in our prior cases. See, e.g., *Palma*, 146 Vt. at 648, 508 A.2d at 727.

■■ Defendant argues that there was insufficient evidence to find actual malice to support the punitive damage award. See, e.g., *Meadowbrook Condominium Ass'n v. South Burlington Realty Corp.*, 152 Vt. 16, 28, 565 A.2d 238, 245 (1989) (fact that defendant did not fulfill contractual obligation because it did not want to spend the money did not evince degree of malice required). Malice is shown by "conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights." *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 297, 576 A.2d 441, 449 (1990). Malice may be inferred from the nature of defendant's conduct and the surrounding circumstances. *Wheeler v. Central Vt. Medical Center*, 155 Vt. 85, 96, 582 A.2d 165, 171 (1989). We believe that the jury could find in this case that Hildebrandt's conduct showed a wanton disregard for plaintiff's rights and was done to oppress. There was no error in submitting the punitive damage issue to the jury.

Finally, defendant asserts that the court's instructions on punitive damages prejudiced the general verdict on liability. Defendant does not claim error in any specific language of the punitive damage instructions, but insists that their presence within the general instructions rendered a finding of liability "a foregone conclusion."

■■ The short answer to this argument is that defendant failed to preserve it below. In order to preserve a charge issue for review, defendant must object to the charge "before the jury retires to consider its verdict, stating distinctly the matter ob-

jected to and the grounds of the objection." V.R.C.P. 51(b). The defendant failed to object to the presence or placement of the punitive damage instructions on the theory advanced here. Thus, it has waived any claim of error on appeal. See *Martell v. Universal Underwriters Life Ins. Co.*, 151 Vt. 547, 552-53, 564 A.2d 584, 588 (1989).

*Affirmed.*