## Mark Baldwin v. Upper Valley Services, Inc.

[644 A.2d 316]

No. 93-375

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 6, 1994

*Harry A. Black* and *Joanne M. Ertel* of *Black, Black & Davis,* White River Junction, for Plaintiff-Appellant.

*Peter G. Anderson, Kimberly R. Elia* and *Alison Cole-Hadley* of *Diamond & Associates, P.C.,* Montpelier, for Defendant-Appellee.

**Allen, C.J.** Following termination of his employment, plaintiff Mark Baldwin sued his employer, defendant Upper Valley Services, Inc. (UVS), on numerous grounds. He appeals from an order granting defendant a directed verdict on a claim of wrongful discharge, and

granting summary judgment to defendant on claims of intentional infliction of emotional distress and failure to compensate for work performed. We affirm in part and reverse in part.

UVS is a private, nonprofit organization providing residential services to mentally retarded individuals in Orange County. In March 1989, defendant hired plaintiff as a substitute staff member to work in several of its facilities. In July 1989, plaintiff was made a full-time residential trainer, which required him to supervise clients directly in an assigned residential facility. Defendant worked three and one-half days per week and remained at a residential facility overnight for three nights, a customary schedule for residential trainers.

Between 11:00 p.m. and 7:00 a.m., hours known as "sleep time," residential trainers are not paid unless a client requires attention and keeps them awake. The compensation rules for sleep time are not in dispute. To be paid for spending time with a client during this period, a trainer must: (1) record the time on a time sheet, and (2) complete an incident report. If a client keeps a trainer awake a total of three hours or more during sleep time, federal law requires that the trainer be paid for all eight hours.

Plaintiff alleges that UVS wrongfully deprived him of sleep-time compensation. He contends that defendant, contrary to established rules, never informed him of the right to compensation during sleep-time periods and never explained the time sheet and incident report requirements. On March 9, 1990, plaintiff filed a complaint with the United States Department of Labor, alleging that defendant never compensated him for sleep time in violation of 29 U.S.C. § 207(a)(1).* A Labor Department representative conducted an investigation with respect to the complaint and concluded that defendant was not required to pay plaintiff for the hours in question. He did find, however, that defendant had been improperly applying a regulation concerning "on-call" time. Consequently, defendant sent each employee affected by the error, including plaintiff, a check for unpaid wages in amounts determined by the Department.

---

\* In relevant part, § 207(a)(1) provides:
  no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
  29 U.S.C. § 207(a)(1).

On June 28, 1990, plaintiff delivered a written complaint to the program director at the facility where he worked, alleging that his co-workers had sexually harassed and verbally abused him based on their perception that he was homosexual. Defendant's program director thereafter informed him that he would no longer have to work with the individuals in question, other than for a ten-minute shift overlap, due to a decrease in staffing requirements at the facility. After his meeting with his supervisor and the program director, plaintiff did not report any further sexual harassment.

On August 1, 1990, plaintiff met with his supervisor concerning allegations that plaintiff had attempted to purchase illegal drugs, during working hours, in the presence of a client. Because plaintiff's account differed from the allegations, his supervisor decided to suspend him pursuant to the terms of the personnel manual, pending further investigation and a final decision by the executive director on the merits of the allegations. About two weeks later, the executive director scheduled a meeting with plaintiff to discuss the allegations and his suspension. Plaintiff cancelled the meeting and declined to meet until he received a written response to his sexual harassment complaint and a written notice concerning the circumstances of his suspension. Plaintiff contends that his request for a written response to his sexual harassment complaint was not a condition precedent to this meeting. The executive director perceived plaintiff's response as an act of gross insubordination, and she terminated his employment on such grounds by letter dated August 16, 1990.

On January 28, 1991, plaintiff sued UVS alleging retaliatory discharge, rights to damages on a promissory estoppel theory arising from reliance on alleged promises made by UVS, intentional infliction of emotional distress, and failure to compensate for sleep time. The trial court granted defendant's motion for summary judgment as to the last three claims, and after the close of evidence granted a directed verdict on the first. Plaintiff has waived appeal on the issue of promissory estoppel.

## I.

We first consider the directed verdict for UVS on plaintiff's wrongful discharge claim. At trial, plaintiff offered evidence of a personnel manual to prove the existence of an implied contract between UVS and him. The trial court ruled that the manual could not serve as the basis for a contractual relationship. Pending appeal of this case, this Court decided *Taylor v. National Life Insurance Co.,*

161 Vt. 457, 464, 652 A.2d 466, 471 (1993), holding that "personnel manual provisions inconsistent with an at-will relationship may be used as evidence that the contract of employment requires good cause for termination." The parties have requested remand of the discharge claim in light of *Taylor*, which applies retroactively to this case as a case pending on direct review. See *American Trucking Ass'n v. Conway*, 152 Vt. 363, 377, 566 A.2d 1323, 1332 (1989). Viewed most favorably to plaintiff's claim of an implied contract, the proffered employee manual represents evidence that could fairly and reasonably support the claim; therefore, a directed verdict cannot stand. See *Lussier v. North Troy Engineering Co.*, 149 Vt. 486, 490, 544 A.2d 1173, 1176 (1988). The trial court's directed verdict on the issue of wrongful discharge is reversed.

II.

█ Plaintiff also appeals the trial court's grant of summary judgment on the claims of intentional infliction of emotional distress and compensation for work during sleep time. Summary judgment is appropriate only where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Murray v. White*, 155 Vt. 621, 628, 587 A.2d 975, 979 (1991); V.R.C.P. 56(c). In determining whether a genuine issue of fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences. *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987). Opposing allegations must have sufficient support in specific facts to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

█ To establish a claim for intentional infliction of emotional distress, plaintiff must show "'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct.'" *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 296, 576 A.2d 441, 448 (1990) (quoting *Birkenhead v. Coombs*, 143 Vt. 167, 174–75, 465 A.2d 244, 247 (1983)). Plaintiff argues that the trial court erred in granting summary judgment on the question of intentional infliction of emotional distress, because plaintiff's affidavit regarding the circumstances of his termination created a genuine issue of material fact as to whether defendant's conduct was outrageous. However, plaintiff's contentions, taken as fact, fall short of the legal standard for "outrageous conduct" articulated in *Crump*. In his response to defendant's motion, plaintiff

alleges that defendant's complaints about his services did not arise until after he had filed his complaint with the Department of Labor and his sexual harassment complaint. Plaintiff also denies that he refused to meet with a superior. He then concludes:

> To sum up, Plaintiff was discharged under suspicious circumstances for reasons that do not stand up under scrutiny. The Plaintiff was never charged, much less convicted, of any criminal offense in regard to the supposed attempt to buy marijuana from Clayton Wilbur, and Mr. Wilbur's affidavit as to this occurrence is absent from the Defendant's motion. The Plaintiff completely denies the supposed attempt to purchase marijuana but does say that Mr. Wilbur, the son of another employee of Upper Valley Services, had attempted to sell him drugs in downtown Randolph.
>
> The Plaintiff respectfully submits that under the circumstances a jury might reasonably find a pattern of conduct on the part of the Defendant and its employees amounting to a conspiracy against the Plaintiff. In any event, the conduct of the people involved is so outrageous that it meets the standards of [*Crump*].

Even in his own words, the foregoing account of plaintiff's treatment at the hands of defendant does not add up to "outrageous conduct." He alleges "suspicious circumstances" in his dismissal, but supports his suspicions by citing only the timing of the charges against him, which followed his own Labor Department and sexual harassment complaints. He denies that he purchased or attempted to purchase marijuana, and concludes with the suggestion of a conspiracy, the members and purpose of which plaintiff leaves to speculation.

Plaintiff's deposition testimony on "outrageousness" is similarly vague, referring principally to a letter from defendant's executive director dated August 16, 1990, informing him that his refusal to meet with her was insubordination warranting termination. He further testified that this letter was the only interaction between himself and the executive director regarding termination.

■ We held in *Crump* that "if the manner of termination evinces circumstances of oppressive conduct," sufficient grounds may be present for intentional infliction of emotional distress. *Id.* at 296, 576 A.2d at 448. But unlike the facts in *Crump*, here there was no interrogation, threats, or badgering by a superior—simply a letter. Plaintiff has failed to identify any conduct that would meet the legal standard for outrageousness. See *Churchey v. Adolph Coors Co.*, 759

P.2d 1336, 1350–51 (Colo. 1988) (affirming summary judgment against plaintiff on claim of outrageous conduct, where allegations were based on failure to follow company's personnel policies); *Staples v. Bangor Hydro-Electric Co.*, 561 A.2d 499, 501 (Me. 1989) (humiliation at staff meetings and demotion without cause fell short of conduct that exceeds "all possible bounds of decency" and that must be regarded as "atrocious and utterly intolerable in a civilized community"); *Petty v. Rogue Federal Credit Union*, 809 P.2d 121, 124 (Or. Ct. App. 1991) (assigning plaintiff to position that guaranteed her failure was not outrageous conduct, in absence of abusive tactics, false accusations, threats, or even raised voices).

The trial court concluded that "[plaintiff] cannot point to a single example of oppressive or outrageous conduct by his employer or its agents to warrant submitting this claim to a jury." Plaintiff argues that the court, in ruling on the summary judgment motion, inappropriately assessed the perceptions and motivations of UVS. In effect, plaintiff suggests a purely subjective test for outrageousness, based not on what defendant's agents or employees did or said, but on what plaintiff personally believed motivated their conduct. Established law, however, posits an objective test for outrageousness: a plaintiff must demonstrate legal harm resulting from inflicted distress so severe that no reasonable person could be expected to endure it. *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991) (citing Restatement (Second) of Torts § 46 comment d (1965)). Plaintiff has not alleged particular susceptibility to stress. Cf. *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1252 (Ill. App. Ct. 1990) ("Conduct which might not ordinarily be actionable may be considered outrageous if the defendant knows that a plaintiff is particularly susceptible to emotional distress."). Plaintiff here does little more than recite the facts preceding his termination, and they do not suffice to create a genuine issue of material fact. The grant of summary judgment on the claim of intentional infliction of emotional distress was proper.

## III.

Plaintiff argues next that the court erred in granting summary judgment on the issue of lack of payment for sleep time. The court rested its judgment on the undisputed fact that plaintiff failed to make the required entry of sleep-time hours on time sheets, thereby waiving his claim to compensation. Plaintiff argues that a genuine issue of material fact exists with respect to the question of waiver. In

his affidavit, plaintiff claims he was never told he had a right to compensation for sleep time, and therefore he could not have waived a right of which he was not aware.

In the affidavit in question, plaintiff states that "I was never told by Upper Valley Services that under the Fair Labor Standards Act I had a right to be paid for any night in which I did not get five hours of sleep." This statement is directly at odds with deposition testimony of April 9, 1992, in which plaintiff admitted that his supervisor told him he would be paid for hours he was kept up if he noted the time on his time sheet. The trial court resolved the conflicting statements by dismissing the affidavit as self-serving. However, it is not the function of the court to weigh the probative effect of conflicting testimony; summary judgment must be denied if a genuine issue of material fact arises. V.R.C.P. 56(c); see *Pierce v. Riggs*, 149 Vt. at 139–40, 540 A.2d at 657–58. The court erred in using the summary judgment proceeding to find, in effect, that plaintiff's statement was not credible, but the error does not warrant reversal.

The court concluded that plaintiff failed to present "any evidence, documentary or otherwise, to substantiate his claim that he worked hours during the night for which he was not paid." His affidavit at most asserts that he never slept five hours per night, and that plaintiff had indicated on his time sheet for the period February 25 to March 3, 1990 that he expected that this fact would be handled according to stipulated policy. None of the proffered evidence supports his sleep-time claim.

Furthermore, plaintiff's affidavit does not contest that he was required to file time sheets and incident reports, which might have provided the basis for sleep-time compensation. Plaintiff explains that he did not file incident reports "because this was the rule rather than the exception. It was my understanding that it was the practice of other employees not to file such incident reports." However, plaintiff fails to demonstrate that defendant was responsible for this "understanding." Without time sheets or incident reports, there was no basis at all to evaluate plaintiff's claim, and even if there was a genuine issue of material fact as to waiver of his right to sleep-time compensation, plaintiff still had no specific factual support for his claim and offered no scenario under which defendant might be held responsible for his omissions.

Plaintiff also relies on a supposed acknowledgement by defendant's executive director that plaintiff "had claimed hours for which they had declined to pay him." But the executive director's affidavit simply

referred to "Mr. Baldwin's desire to be reimbursed for all hours that he was present at the residential facility"—in effect, a statement directly contrary to that now claimed by plaintiff.

In sum, the court could properly conclude that there was no genuine issue of material fact on the question of plaintiff's failure to file time sheets or incident reports, which, if filed, would have offered an evidentiary basis for sleep-time compensation even if defendant had failed to advise plaintiff of his right to such compensation when he commenced his employment. Consequently, the court did not err in granting summary judgment to defendant on the issue of sleep-time compensation.

*Judgment on the claim of an implied employment contract is reversed and the cause is remanded; judgment on claims of intentional infliction of emotional distress and wrongful failure to compensate for time worked is affirmed.*