## David J. Birkenhead and Marie Birkenhead v. Ann Coombs

[465 A.2d 244]

No. 569-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 7, 1983

168

*Paul S. Kulig* of *Keyser, Crowley, Banse, Abell & Facey*, Rutland, for Plaintiff-Appellant.

*Sam Farrington*, Vermont Legal Aid, Inc., Rutland, for Defendant-Appellee.

**Hill, J.** This is an action for ejectment based upon an alleged failure to pay rent. Defendant, by way of counterclaim, sought relief for plaintiffs' alleged breach of the implied warranty of habitability, for the intentional infliction of emotional distress, and for the costs of improvements which she had made to her apartment. After trial by jury, plaintiffs were awarded $585 for their claim of back rent, while defendant was awarded $168.50 for improvements made to the premises, $430 for breach of the implied warranty of habitability, and $500 actual/$750 punitive damages for plaintiffs' intentional infliction of emotional distress. Following the denial of their motions for judgment notwithstanding the verdict, V.R.C.P. 50, and for new trial, V.R.C.P. 59, plaintiffs filed a timely notice of appeal. We affirm.

We begin with a review of the facts in a light most favorable to the prevailing party below. On March 18, 1980, defendant and her two-year-old child began renting an apartment for $235 per month at 30 Elm Street in Rutland. Prior to the commencement of the tenancy, plaintiffs, through their agent, orally promised to provide heat and all necessary repairs to the apartment. They also agreed to clean the soiled carpet and supply defendant with paint to cover the apartment's damaged walls, no later than April 1, 1980. Upon moving into the apartment, defendant quickly discovered that in addition to the damaged walls and carpet, the toilet and shower were not working properly. Despite defendant's repeated requests to fix the toilet, plaintiffs did nothing, thus leaving defendant with the task of manually emptying the contents of the toilet after each use.

The situation persisted for a full month until defendant, unable to bear the growing stench in the apartment, hired a local plumber to fix the toilet and shower. When presented with the plumbing bill, defendant contacted plaintiffs to explain that her monthly welfare grant did not afford her the opportunity to pay both the rent and the plumbing bill. Conse-

quently, defendant paid the bill with plaintiffs' consent, and then deducted the cost of repairs from her May rent payment.

Thereafter, defendant's relationship with plaintiffs steadily deteriorated. Throughout the course of the next few months, plaintiffs resorted to numerous "self-help" actions in an effort to force defendant to vacate the apartment. Specifically, plaintiffs disconnected, on separate occasions, defendant's heat, hot water, and electricity. Furthermore, they removed defendant's kitchen stove, and repeatedly threatened to "board up" the premises and "kick out" defendant and her child. Despite these tactics, as well as their failure to fulfill their promises to clean the carpet and supply the paint, defendant continued to pay her monthly rent, less the cost of repairing and restoring the disrupted services. In mid-July of 1980, plaintiffs initiated this ejectment action and refused to accept further rent from defendant. In mid-September of 1980, defendant and her child vacated the premises.

On appeal, plaintiffs assert that the trial court abused its discretion when it denied their motions for judgment notwithstanding the verdict and for a new trial on defendant's claims of breach of warranty and intentional infliction of emotional distress. In evaluating an allegation of abuse of discretion, we must determine whether the evidence, viewed in a light most favorable to defendant, establishes a cause of action in her favor. *Hershenson* v. *Lake Champlain Motors, Inc.*, 139 Vt. 219, 222, 424 A.2d 1075, 1077 (1981). "Eliminating consideration of weight, credibility and conflicting inferences, the question is whether the result reached by the jury is sound in law on the evidence produced." *Id.* (citing *Perkins* v. *Factory Point National Bank*, 137 Vt. 577, 579, 409 A.2d 578, 579 (1979)).

With regard to the breach of warranty claim, plaintiffs offer three reasons to support their argument that the jury award of $430 was improper. They essentially argue: (1) that defendant failed to introduce sufficient evidence to enable the jury to assess damages for the breach; (2) that the damages assessed were excessive; and (3) that the trial court's decision to allow defendant a recovery for the improvements made to the premises and for the breach of the implied warranty of

habitability constituted a double recovery. We will take plaintiffs' arguments in order.

Plaintiffs concede at the outset that the implied warranty of habitability applies to residential leases. Given the doctrine's applicability, and given plaintiffs' challenge to the sufficiency of the evidence to support the jury award, it is essential to determine the appropriate measure of damages. The trial court instructed the jury to assess the diminution in value of the rented premises in order to compute defendant's damages for the breach of warranty:

> The measurement of her damages is the monthly rent less that amount reasonably found by you to be the value of the services or facilities she did not have. Be careful to apply this formula only to those periods of time when you determine the services or service was not functioning or was substantially impaired.

In reviewing the validity of the trial court's instruction, we note that the diminished value approach has been used by this Court in analogous settings. See, e.g., *Bolkum v. Staab*, 133 Vt. 467, 346 A.2d 210 (1975) (for breach of the implied warranty against structural defects in the sale of a newly constructed house) ; *Berlin Development Corp. v. Vermont Structural Steel Corp.*, 127 Vt. 367, 250 A.2d 189 (1968) (for breach of a covenant of quiet enjoyment). In addition, this approach is widely used in those jurisdictions which have expressly recognized the applicability of the implied warranty of habitability to residential leases:

> Inasmuch as the duty of the tenant to pay rent is coextensive with the landlord's duty to maintain the premises in habitable condition, the proper measure of damages for breach of the warranty is the difference between the fair market value of the premises if they had been as warranted, as measured by the rent reserved under the lease, and the value of the premises during the period of the breach.

*Park West Management Corp. v. Mitchell*, 47 N.Y.2d 316, 330, 391 N.E.2d 1288, 1295, 418 N.Y.S.2d 310, 317 (1979); see also *McKenna v. Begin*, 5 Mass. App. 304, 309, 362 N.E.2d 548, 553 (1977). When evaluating damages under this stand-

ard, the finder of fact must weigh both the severity and duration of those conditions which led to the breach, as well as any remedial steps taken by the landlord to abate the conditions. *Park West Management Corp.* v. *Mitchell, supra.*

A review of the record in this case reveals extensive evidence depicting the damaged walls, soiled carpet, lack of heat, disconnected electrical service, and inadequate plumbing which defendant had to live with. Indeed, plaintiffs chose to aggravate rather than remedy the conditions. Nevertheless, they insist that competent evidence establishing the market value of the premises in its state of disrepair must be introduced to enable the jury accurately to assess damages. In the absence of such evidence, plaintiffs contend that a jury award for a breach of the implied warranty will be based on nothing more than speculation and conjecture. We disagree.

This Court recognizes that computing damages under the diminished value approach involves a degree of uncertainty. However, the trier of fact "is not to be deterred from this duty by the fact that damages are not susceptible of reduction to an exact money standard." *Vermont Electric Supply Co.* v. *Andrus,* 132 Vt. 195, 200, 315 A.2d 456, 459 (1974). Moreover, in residential lease disputes involving a breach of the implied warranty of habitability, public policy militates against requiring expert testimony: "Useful expert testimony is unlikely to be readily available as to the 'worth' of the defects . . . , and even if it were available, the imposition upon indigent tenants of the financial burden of supplying expert witnesses would seriously diminish the effectiveness of the relief . . . ." *McKenna* v. *Begin, supra,* 5 Mass. App. at 311, 362 N.E.2d at 553 (citation omitted).

Accordingly, so long as sufficient evidence is introduced to permit with reasonable certainty an estimation of damages, the task of determining damages will be entrusted to the sound discretion of the fact finder. *Vermont Electric Supply Co.* v. *Andrus, supra,* 132 Vt. at 200, 315 A.2d at 459 (citing *G & H Holding Co.* v. *Dutton,* 118 Vt. 406, 412, 110 A.2d 724, 728 (1955)). Furthermore, where an action does not permit exact computation, an award of damages must stand unless grossly excessive. *Girroir* v. *Carpenter,* 136 Vt. 290,

174

292, 388 A.2d 831, 833 (1978) (citing *Scrizzi* v. *Baraw*, 127 Vt. 315, 322, 248 A.2d 725, 730 (1968)). In view of the facts outlined above, the jury was fully justified in awarding defendant $430 for plaintiffs' breach of warranty.

■■■■■ In the alternative, plaintiffs argue that the allowance of the cost of repairs to defendant for improvements made to her apartment, coupled with damages based upon the diminished value of the dwelling, constituted a double recovery. We again disagree. When a claim for back rent is made in an ejectment action, it is well established that improvements made to the premises may be taken into consideration. 12 V.S.A. § 4814. The trial court specifically cautioned the jury to assess damages for the breach of warranty only to those periods of time when they determined the conditions leading to the breach existed. "[T]he proper evaluation of evidence under the instructions of the trial judge is the very task our system must assume juries can perform." *State* v. *Picknell*, 142 Vt. 215, 231–32, 454 A.2d 711, 719 (1982) (quoting *Watkins* v. *Sowders*, 449 U.S. 341, 347 (1981)). Viewed in this light, the jury's decision first to reimburse defendant for her out-of-pocket costs for improvements, and then award her damages for the diminished value of her dwelling during the time when the improvements had not been made, was proper.

Finally, plaintiffs contend that defendant failed to prove that she suffered the extreme emotional distress necessary to justify the jury's award of $500 compensatory and $750 punitive damages. Plaintiffs concede that the evidence introduced describes defendant as being shaky, upset, afraid and, at times, crying as a result of their "self-help" tactics. They argue, however, that some distress must be expected in landlord-tenant disputes, and the distress exhibited by defendant fell far short of the extreme or emotional distress required by *Sheltra* v. *Smith*, 136 Vt. 472, 392 A.2d 431 (1978).

■■■■■ In *Sheltra*, we outlined the four elements necessary to establish a prima facie case of intentional infliction of emotional distress: "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous con-

duct." *Id.* at 476, 392 A.2d at 433 (citing *Spackman* v. *Good,* 245 Cal. App. 2d 518, 530, 54 Cal. Rptr. 78, 84–85 (1966)). In denying plaintiffs' motion for judgment notwithstanding the verdict regarding defendant's claim of intentional infliction of emotional distress, the trial court stated:

> As to the issue of extreme emotional distress, I was as careful as I could be in my instructions to limit the recovery possibility . . . . I felt that there was substantial evidence that would support emotional distress of a severe nature by having electricity cut off on two occasions, the loss of heat, loss of hot water, surreptitious removal of a stove, and conduct by . . . [p]laintiff[s] and [their] agent that was designed to force this woman to move against her legal rights, at least until they could have been adjudicated in the ejectment action. I feel that there was substantial evidence that went before that jury.

Our review of the record compels us to concur with the trial court's view of the evidence. Since plaintiffs have failed to establish an abuse of discretion in the denial of their motions, the judgment of the trial court is affirmed.

*Affirmed.*