2007 VT 131

**Reggie COOPER v. Glenn A. MYER**

[944 A.2d 915]

No. 06-302

*Pearson,* J.

¶ 1. November 28, 2007. Defendant Glenn Myer appeals a $350,000 jury verdict on defamation and intentional infliction of emotional distress (IIED) claims filed against him by plaintiff Reggie Cooper. Defendant raises four claims of error: (1) that the trial court erred as a matter of law in determining that plaintiff was not a public figure; (2) that the court erred in denying defendant's motion for judgment as a matter of law on the defamation claim; (3) that the court erred in allowing the IIED claim to go to the jury; and (4) that the court abused its discretion in denying defendant's motion for new trial. We affirm.

¶ 2. The dispute between the parties originated with a real estate transaction. At the time, plaintiff was president and general manager of Topnotch at Stowe Resort and Spa (Topnotch), and defendant was the owner of a Topnotch condominium, where he resided with his wife. Shortly after he purchased his condominium at the resort, defendant entered into an agreement with friends, the Coughlins, to purchase another Topnotch unit to be used as an investment property. The Coughlins entered into a purchase-and-sale agreement with Topnotch for the condominium. The contract was conditioned on the Coughlins obtaining financing within thirty days and provided that Topnotch could keep the deposit of $46,900 if the Coughlins were in default. The Coughlins failed to obtain financing within the allotted period. Topnotch notified the buyers that they were in default and that it would retain the deposit, and later placed the property under contract with a new buyer at a higher selling price.

¶ 3. Defendant and the Coughlins filed suit against Topnotch, claiming that Topnotch wrongfully converted the deposit. Defendant also claimed that plaintiff represented to him that despite the Coughlins' default, Topnotch would extend the closing date and sell the unit to defendant if he obtained the requisite financing. He charged that Topnotch's failure to sell him the property as promised was consumer fraud as well as common law fraud. The court found in Topnotch's favor, allowing Topnotch to retain the deposit. We affirmed. See *Coughlin v. T.N. Assocs.*, No. 2005-195 (Vt. May 25, 2006) (unreported mem.).

¶ 4. In June 2003, plaintiff filed this suit in Lamoille Superior Court, initially alleging only defamation for statements uttered by defendant to various third parties calling plaintiff a thief and accusing him of embezzling money from Topnotch, stealing money from defendant and Topnotch, being under criminal investigation, and being fired from Topnotch. Later, plaintiff amended the complaint to include a claim of IIED based on an incident in which defendant called the Stowe police department threatening to kill plaintiff and resulting in the police having to warn plaintiff to immediately vacate the Topnotch premises. The case was tried before a jury in February 2006. The jury returned a verdict awarding plaintiff $150,000 on his defamation claim and $200,000 for his IIED claim. This appeal followed.

¶ 5. Defendant first argues that the trial court erred as a matter of law in granting plaintiff's motion in limine to consider plaintiff a private individual. Defendant claims that by virtue of his status as president and general manager of a world-class resort plaintiff was a public figure and should have had the higher burden of proving that defendant's defamatory statements were made with actual malice. See *Ryan v. Herald Ass'n*, 152 Vt. 275, 280, 566 A.2d 1316, 1319 (1989) (public-figure plaintiff must prove malice by showing the defendant made statements with actual knowledge they were false). Even if plaintiff was not a public figure for all purposes, defendant claims that he met the legal elements of a limited public figure due to the public nature of the dispute.

¶ 6. Whether the plaintiff is a public figure is a legal question for the court to decide. On review, we consider questions of law de novo. *Vt. Alliance of Nonprofit Orgs. v. City of Burlington*, 2004 VT 57, ¶ 5, 177 Vt. 47, 857 A.2d 305. In defamation suits, a plaintiff may be considered a public figure in one of two circumstances:

either the individual "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes," or, more typically, he "voluntarily injects himself or is drawn into a particular public controversy," rendering him a public figure for limited purposes. *Burgess v. Reformer Publ'g Corp.*, 146 Vt. 612, 615, 508 A.2d 1359, 1360 (1986) (quotation omitted). Notwithstanding the impressive list of civic and business organizations in which plaintiff held leadership positions and his prominent role in operating a well-known resort, we cannot agree with defendant that he achieved the requisite pervasive power and influence to qualify as a public figure. Otherwise, practically anyone engaged in business could be considered a public figure, undermining the common law protections afforded private citizens against reckless defamation of their character. Nor can we consider plaintiff a limited public figure for purposes of the instant matter, as the case at hand involves a private dispute relating to a real estate transaction. Cf. *id.* at 616 n.2, 508 A.2d at 1361 n.2 (a public controversy is one that is debated publicly and has "foreseeable and substantial ramifications for nonparticipants") (quotation omitted). Thus, contrary to defendant's assertion, the trial court did not err in ruling that plaintiff was a private citizen for purposes of the defamation action.

¶ 7. To the extent that defendant claims the trial court failed to instruct the jury that truth is a complete defense to defamation, the record shows otherwise. The special verdict form, provided to the jury in deliberation, specifically asked whether defendant's statements were true and, if so, directed the jury to find in favor of defendant on the defamation claim.

¶ 8. Defendant's next claim of error, that the court erred in denying his renewed motion for judgment as a matter of law pursuant to Vermont Rule of Civil Procedure 50(b), also fails. In his renewed motion, defendant argued that the defa-

mation claim should not have gone to the jury because plaintiff had failed to establish actual harm, a necessary element of the claim. The trial court denied the motion, finding that there was "evidence, and testimony from Plaintiff himself, and from other witnesses, that he was humiliated, embarrassed, and his reputation for truth and honesty at least temporarily put in question, all sufficient to put the claim to the jury for their ultimate determination." In reviewing a Rule 50 motion, we consider the evidence in the light most favorable to the plaintiff, upholding the trial court's denial if there is evidence that fairly or reasonably supports the plaintiff's legal theory. See *Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 118-20, 758 A.2d 795, 798-99 (2000).

¶ 9. In Vermont, when sufficient evidence is presented to the jury to support a finding that the defendant recklessly or knowingly made certain defamatory statements about the plaintiff, the plaintiff need not prove special damages to recover. See *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 295, 576 A.2d 441, 448 (1990). False accusations of theft, of which there was ample evidence in this case, amount to slander per se. *Id.* at 294, 576 A.2d at 447. Thus, plaintiff was required only to present sufficient evidence of actual harm resulting from the defamatory statements to get the issue before the jury. *Lent v. Huntoon*, 143 Vt. 539, 549, 470 A.2d 1162, 1169-70 (1983). Evidence of "embarrassment and temporary injury to reputation" is sufficient to establish actual harm. *Wood v. Wood*, 166 Vt. 608, 609, 693 A.2d 673, 674 (1997) (mem.) (quotation omitted). Here, the trial court appropriately ruled that the evidence and testimony that plaintiff suffered emotional strain, embarrassment and humiliation, and felt compelled to spend substantial time defending himself against the accusations to employees and community members was sufficient to put the issue before the jury.

¶ 10. Defendant's argument that there was insufficient evidence to support an action for IIED likewise fails, as defendant neither filed a pretrial motion to dismiss the claim nor objected before the issue went to the jury. On appeal, defendant relies on a conclusory statement in his pretrial memorandum to the effect that his repeated threats to kill plaintiff, made to a Stowe police officer, were not outrageous or extreme enough to meet the elements of IIED. Within that memorandum, however, he failed to "state with particularity" the grounds of his motion, if any, or to "set forth the relief or order sought," as required by Rule 7(b)(1). Similarly, defendant did not object to either the submission of the IIED claim to the jury or the IIED instructions given to the jury, including the questions on the special verdict form. Thus, defendant failed to preserve the issue, and we need not reach it on appeal. See *Ball v. Barre Elec. Supply Co.*, 146 Vt. 245, 246, 499 A.2d 786, 787 (1985).

¶ 11. Finally, we address defendant's contention that the trial court erred in denying his Rule 59(a) motion for a new trial. In his motion, defendant argued that the jury award of $350,000 was "clearly excessive, unreasonable, and shock[s] the conscience." Defendant further argued that the defense was surprised and sandbagged by plaintiff's closing argument urging the jury to award damages based on a calculation of $10,000 per year for sixteen years — the number of years until plaintiff's youngest child turned eighteen and during which plaintiff claimed he and his family would be deprived of living in Vermont because of defendant's actions.

¶ 12. The trial court has discretion to decide motions for new trial, and we therefore review them only for an abuse of discretion. *Irving v. Agency of Transp.*, 172 Vt. 527, 528, 768 A.2d 1286, 1289 (2001) (mem.). Here, the court compared the plaintiff's jury award with those in

similar cases and determined that the damages were well within the range of reasonable awards, if not comparatively low. Furthermore, the court emphasized that the recoverable damages in defamation and IIED suits are "soft" damages that are not easily calculated. See *Lent*, 143 Vt. at 553, 470 A.2d at 1172. As such, it was left to the sound discretion of the jury to decide fair compensation for the harm suffered by plaintiff. See *id.* (stating that courts should not interfere with jury awards where precise calculation is impossible unless "grossly excessive"). In its verdict, the jury specifically awarded $75,000 for injury to plaintiff's reputation, $75,000 for actual harm suffered by plaintiff, and $200,000 for "*separate* and additional emotional distress suffered by Plaintiff because of the 'death threat' made by Defendant and communicated to Plaintiff by the Stowe police." Contrary to defendant's assertion, the jury award does not exhibit signs of undue passion, prejudice or sympathy. Moreover, the jury does not appear to have been influenced by the calculation suggested by plaintiff in closing argument, as its awards diverge significantly from that formula. Finally, defendant's claim that he was given no advance warning of the damages that plaintiff would suggest to the jury is belied by plaintiff's pretrial settlement offer of $485,000 — significantly more than the specific damage amounts plaintiff argued for at trial. In any event, as the trial court noted, plaintiff had no obligation to provide precise calculations or amounts that he would request at trial, as damages in such actions are "necessarily imprecise and difficult to quantify." The trial court did not abuse its discretion.

*Affirmed.*

Motion for reargument denied January 16, 2008.