Simonelli v. Mt. Snow Ltd., No. 8-1-11 Wmcv (Carroll, J., Mar. 7, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windham Unit** | **Docket No. 8-1-11 Wmcv** |

| | |
|---|---|
| **Maryann Simonelli**<br> **Plaintiff,**<br><br> **v.**<br><br> **Mt. Snow Ltd, dba Mount Snow Grand Summit**<br>**Hotel Resort and Conference Center,** *et al*.<br> **Defendants** | |

## Decision on Motion for Summary Judgment

## Factual Background[1]

Maryann Simonelli, Plaintiff, sues Jeffery Hudon, Defendant, for assault and battery (Count I), a civil rights violation under 42 U.S.C. § 1982 (Count II), intentional infliction of emotional distress (Count III), reckless endangerment (Count IV), and false imprisonment (Count V). All of the claims relate to the events that occurred in early morning of March 9, 2010 at the Grand Summit Hotel. At that date, Plaintiff was a fifty-five year old woman with a weight of 128 pounds. Plaintiff drank alcohol during the dinner before this incident. Plaintiff also has mental health issues.

In the early morning of March 9, 2010, Plaintiff appeared at the lobby of the Grand Summit Hotel. Plaintiff became agitated and began making statements about a conspiracy related to the food industry. Security personnel arrived and Plaintiff ran up the stairs. In an attempt to escape, Plaintiff broke a glass window with a fire extinguisher. An employee of the Grand Summit Hotel called the police.

The situation escalated when the police officer, Defendant Jeffery Hudon, arrived. After a short observation, Defendant determined Plaintiff was disorderly and decided to remove her. Defendant brought Plaintiff to the ground and handcuffed her. Defendant dragged Plaintiff to his cruiser and placed her into the front seat. Plaintiff resisted by hooking her legs outside of the cruiser. Defendant kneed Plaintiff several times as Plaintiff refused to cooperate. The police officer then took Plaintiff from the car and put her on the ground. Plaintiff indicated Defendant broke her leg in the process. Eventually, Defendant took Plaintiff to the station and placed her in a holding cell. The police determined Plaintiff suffered an injury during the arrest and took Plaintiff to the hospital, where the doctors discovered Plaintiff had a broken hip.

---

[1] Plaintiff failed to submit a statement of disputed material facts as required by V.R.C.P. 56(c)(2). Instead, Plaintiff attached exhibits to her opposition to the motion for summary judgment. Defendant consented to using Plaintiff's version of the facts as identified in her affidavit, the affidavit of her expert, and an excerpted deposition.

**Procedural History**

Defendant filed a motion for summary judgment on August 13, 2012. Plaintiff opposed the motion on September 27, 2012. Defendant responded to the opposition on October 19, 2012.

**Standard of Review**

The Court grants summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3) (2000). The Court makes all reasonable inferences and resolves all doubts in favor of the non-moving party. *Lamay v. State*, 2012 VT 49, ¶ 6. Nevertheless, the non-moving party cannot rely solely on the pleadings to rebut credible evidence. *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 5, 175 Vt. 413.

**Discussion**

1. *Qualified Immunity on Excessive Force and Civil Rights Violations*

The first issue is whether the police officers' actions are protected by qualified immunity. Qualified "immunity protects lower-level government employees from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority." *Sprague v. Nally*, 2005 VT 85, ¶ 4, 172 Vt. 222; *see also Long v. L'Esperance*, 166 Vt. 566, 571 (1997) (discussing qualified immunity in the context of an unlawful arrest); *Mayo v. Winn*, No. S0952-05 CnC, 2009 WL 8103582 (Vt. Super. Ct. May 14, 2009) (discussing whether police used too much force in removing a diabetic from his car and suggesting qualified immunity might protect officers in the absence of a specific protocol). The Court should apply a two part-analysis. *See Sprague*, 2005 VT 85, ¶ 5. First, the Court must evaluate if the officer violated a constitutional right. *Id.* Second, the Court must evaluate if the "right was clearly established at the time of the alleged violation." *Id.* (internal quotations omitted). "Thus, if the officer reasonably believes that his or her actions were lawful, the officer receives qualified immunity even if a court later determines that they were not." *Id.* The right to be free from excessive force is established and the only dispute is whether Defendant violated that right.

Federal courts provide helpful background for this case. In defining the standard, the U.S. Supreme Court reasoned "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Sixth Circuit added "[t]he diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted." *Champion v. Outlook Nashville, Inc.*¸ 380 F.3d 893, 904 (2004). The Ninth Circuit declined to adopt a different standard for mentally-ill persons. *Dummond v. Anaheim*¸ 343 F.3d 1052, 1058 (9th Cir. 2003). Yet, the court reasoned that using force on mentally-ill persons may exacerbate the situation and the police should use their judgment and provide counseling if possible. *Id.*

Some courts have allowed summary judgment based on qualified immunity. In *Brown v. Rinehart*, the plaintiff started yelling at police officers as they drove past his porch. 325 Fed.Appx. 47, 48–49 (3d Cir. 2009). The officers instructed the plaintiff to calm down but the plaintiff did not stop yelling. *Id.* at 49. The officers sought to arrest the plaintiff for disorderly conduct. *Id.* The plaintiff attempted to run into his house but the officers grabbed him and placed him in handcuffs. *Id.* The plaintiff continued to resist despite warnings that the officers would apply pepper spray. *Id.* The officers pepper sprayed the plaintiff but the plaintiff continued to resist. The officers then delivered a "stun blow" with a knee to the plaintiff's thigh. *Id.* The officers took the plaintiff to the hospital where another officer noted the plaintiff appeared to be intoxicated. *Id.* Applying the objectively reasonable standard, the Third Circuit affirmed the district court's granting of summary judgment for qualified immunity. *Id.* at 50–51.

The Eleventh Circuit also held a police officer's use of force was not excessive and fell under qualified immunity. *Nolin v. Isbell*, 207 F.3d 1253, 1255–57 (11th Cir. 2000). The plaintiff and a friend were setting up band equipment at a festival. *Id.* at 1254. The plaintiff and a friend began rough-housing and a witness mistakenly called "fight," drawing the officer's attention. *Id.* at 1254–55. The officer then grabbed the plaintiff from behind, threw him against a van, kneed him in the back, searched the plaintiff's groin area, and handcuffed him. *Id.* at 1255. Plaintiff suffered minor injuries and bruising. *Id.* The court held this use of police force was de minimis and could not support a claim of excessive force. *Id.* at 1257.

On the other hand, courts often hold questions of excessive force create genuine issues of material fact. In *Lawler v. Taylor*, an OUI defendant refused to follow the police office's verbal commands and started yelling at police and then raised his arm slightly. 268 Fed.Appx. 384, 385–86 (6th Cir. 2008). The officer tackled the plaintiff, kneed the plaintiff's back twice, and hit the plaintiff with his elbows. *Id.* at 386. The Sixth Circuit affirmed the district court's denial of summary judgment. *Id.* at 388. Also, the Ninth Circuit found a genuine issue of material fact existed as to whether the police used excessive force where the police applied a choke-hold, applied pepper spray, and kneed plaintiff's back when plaintiff did not resist. *Barnard v. Las Vegas Metro. Police Dep't*, 310 Fed.Appx. 990, 992–93 (9th Cir. 2009).

Courts are hesitant to find qualified immunity as a matter of law where the plaintiff had developmental or mental health problems. In *Champion*, the police responded to a developmentally disabled plaintiff who was non-verbal and non-responsive and had overwhelmed his caregiver. 380 F.3d at 896–97. The police had some knowledge of the plaintiff's disability but did not understand its scope. *Id.* The officers decided to take the plaintiff to the ground, where plaintiff continued to squirm and kick his legs in the air. *Id.* at 397. The officers eventually subdued the plaintiff but continued to place pressure on his back and apply pepper spray after the plaintiff stopped resisting. *Id.* at 898. Plaintiff suffered a cardiac arrest shortly after the incident and died. *Id.* The Sixth Circuit upheld a jury verdict against the officers. *Id.* at 909.

In *Dummond*, the Ninth Circuit held police were not protected by qualified immunity where they continued to apply force after subduing a mentally-ill plaintiff. 343 F.3d at 1054–55, 1062–63. The plaintiff suffered from bi-polar disorder and schizophrenia. *Id.* at 1054. The officers arrived to escort the plaintiff to a hospital. *Id.* The plaintiff became agitated and started

3

hallucinating. *Id.* The officers took the plaintiff to the ground and placed their knees against the plaintiff's back. *Id.* The plaintiff did not resist. *Id.* The plaintiff weighed 160 pounds compared to an officer weighing 225 pounds and another officer. *Id.* The plaintiff told the officers that he could not breathe and eventually lost consciousness and fell into a vegetative state. *Id.* at 1054–55. The court found this level of force, if proven, would be excessive under the circumstances. *Id.* at 1063.

In this case, the Court must deny summary judgment on the qualified immunity issue. The undisputed facts indicate that Plaintiff was mentally-ill and caused a disturbance at the Grand Summit Hotel. Defendant responded by handcuffing Plaintiff, placing her in his cruiser, and delivering knee-strikes when Defendant resisted. The parties dispute the extent of disturbance Plaintiff caused and the extent of resistance she offered. Drawing all inferences in favor of Plaintiff, a jury could find Defendant used excessive force. *See Lamay*, 2012 VT 49, ¶ 6.

Specifically, a jury must determine if Defendant responded inappropriately to the situation and caused Plaintiff needless harm. Like *Dummond*, Plaintiff was much smaller than Defendant and suffered from mental illness. *See* 343 F.3d at 1054–55, 1062–63. Moreover, Defendant applied more than a minimal amount of force and caused Plaintiff's hip to break. *See Nolin*, 207 F.3d at 1255–57. Although Plaintiff offered some resistance, the Court cannot determine if Defendant responded appropriately because the parties dispute the amount of resistance Plaintiff offered. It is also unclear how apparent Plaintiff's mental illness would have been to Defendant, which would affect the appropriateness of his response. *See Champion*, 380 F.3d at 896–98. Under these circumstances, the Court cannot grant the motion for summary judgment on the issue of qualified immunity.

### 2. *Privilege to Use Force in Making Arrest*

Separate from his defense of qualified immunity, Defendant also asserts that he cannot be sued for assault and battery because of a police officer's privilege to use force in conducting an arrest. Much like qualified immunity, the privilege to use force protects officers from lawsuits where they used reasonable force to arrest an individual. *Coll v. Johnson*, 161 Vt. 163, 164–65 (1993). The privilege does not protect officers who use excessive force. *See id.* As discussed above, the Court cannot conclude on summary judgment that Defendant did not use excessive force. Accordingly, the privilege to use force in making an arrest does not protect Defendant at this stage.

### 3. *Use of Excessive Force*

Defendant also argues that he cannot be held liable because he did not use excessive force. As discussed above, the use of excessive force in this case will be a jury question based upon the disputed facts.

### 4. *Intentional Infliction of Emotional Distress*

Next, Defendant argues Plaintiff cannot maintain an action for intentional infliction of emotional distress because Plaintiff's emotional injury predated Defendant's arrival and

Defendant's actions were not extreme and outrageous. In Vermont, a Plaintiff who alleges intentional infliction of emotional distress must show the Defendant intentionally or recklessly caused extreme emotional distress through outrageous conduct. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10. 184 Vt. 1. Plaintiff alleges, and her affidavit supports, facts suggesting Plaintiff recklessly used excessive force and that use of force caused her to suffer post-traumatic stress syndrome.

The only element of the tort that Defendant can dispute here is whether the force used by Defendant constituted outrageous conduct. "Plaintiff's burden on this claim is a heavy one as he must show defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395 (internal quotations omitted) Although the Vermont Supreme Court has addressed claims for intentional infliction of emotional distress from landlord-tenant disputes, defamation, and employment situations, it has not addressed the question in regard to excessive force. *See, e.g., Cooper v. Myer*, 2007 VT 131, ¶¶ 11–12, 183 Vt. 561 (defamation); *Farnum v. Brattleboro Retreat, Inc.*, 164 Vt. 488, 497–98 (1995) (employment); *Birkenhead v. Coombs*, 143 Vt. 167, 174 (1983) (landlord-tenant dispute). *But cf. Long*, 166 Vt. at 575 (allowing a claim for intentional infliction of emotional distress to go to jury where the defendant police officer arrested the plaintiff without sufficient cause).

The closest case in Vermont comes from the Superior Court. *See Mayo*, 2009 WL 8103582. In *Mayo*, state troopers stopped a driver going at excessive rates of speed on interstate 89. *Id.* The troopers eventually forcibly removed the driver from his car. *Id.* Although Judge Pearson denied summary judgment on the claims related to federal rights violations and assault and battery, the court granted summary judgment on an intentional infliction of emotional distress claim based on excessive force. *Id.* The court reasoned intentional infliction of emotional distress requires a plaintiff to show both intent or recklessness and outrageous conduct. *See id.* The court found a reasonable jury could not conclude the Plaintiff showed either intentional misconduct or outrageous behavior. *Id.* Moreover, the court noted intentional infliction of emotional distress is more difficult to prove than federal rights violations or assault and battery.

Other jurisdictions also provide guidance on when a plaintiff can maintain an action for intentional infliction of emotional distress. The First Circuit affirmed a jury-verdict for intentional infliction of emotional distress against a police officer[2] who used excessive force "despite an absence of resistance, threats, or attempt to flee" by the Plaintiff. *Poy v. Boutselis*¸352 F.3d 479, 485 (1st Cir. 2003). The Court further affirmed the district court's holding that use of excessive force can be repugnant to the community and use of excessive force goes beyond the authority of a police officer. *Id; see also Betancourt v. Slavin*, 676 F. Supp. 2d. 71, 81 (D. Conn. 2009) (denying summary judgment on intentional infliction of emotional distress claim from police officer's use of excessive force); 101 A.L.R.5th 515 § 7 (discussing when excessive force can be grounds for a claim of intentional infliction of emotional distress).

---

[2] The police officer was "specially employed" by a club owner to watch the club. Nevertheless, the First Circuit affirmed the jury verdict that the actions went beyond the scope of a police officer, indicating the court did not treat this incident as a merely private fight.

This Court finds a police officer's use of excessive force can be grounds for a claim for intentional infliction of emotional distress. Excessive force can be outrageous in some circumstances. A reasonable jury could conclude Plaintiff suffered emotional distress from the Defendant's alleged use of excessive force. This case is distinguishable from *Mayo* because the Defendant did far more than abruptly remove Plaintiff from a car. Allegedly, Defendant also threw Plaintiff on the ground, kneed her multiple times, and ignored pleas for help. Accordingly, the Court must deny summary judgment on the claim for intentional infliction of emotional distress.

5. *Reckless Endangerment*

Plaintiff's fourth count asserts a claim in tort for reckless endangerment. Reckless endangerment is a criminal charge and not a tort. *See* 13 V.S.A. § 1025. Plaintiff cannot maintain an action for reckless endangerment in a civil proceeding.

6. *False Imprisonment after Arrest*

Finally, Plaintiff asserts a claim of false imprisonment. Generally, an actor is liable for false imprisonment if the actor intentionally confines another person and the other person is aware of the confinement. *See* Restatement (Second) of Torts § 35. Law enforcement officers have a privilege to arrest persons if they have probable cause to make an arrest. *See Long*, 166 Vt. at 571; *see also* V.R.Cr.P. 3 (describing when an officer can make an arrest). Furthermore, the officer can make reasonable mistakes without facing tort liability. *See Long*, 166 Vt. at 571. Qualified immunity protects an officer with an objectively reasonable believe that probable existed. *Id.*

In this case, Defendant is protected from the false imprisonment claim by qualified immunity. Plaintiff admits to breaking a window with a fire extinguisher, which the State later charged as a felony under 13 V.S.A. § 3701(A). Although it appears Defendant did not witness the window incident, this event gave Defendant probable cause to arrest Plaintiff under V.R.Cr.P. 3(a). Moreover, Plaintiff also admits to running around the Grand Summit Hotel and yelling, which led the State to charge her with disorderly conduct under 13 V.S.A. § 1026. These events would have given Defendant probable cause to arrest Plaintiff under V.R.C.P. 3(b). Once Defendant made a lawful arrest, Defendant could confine Plaintiff. Accordingly, Plaintiff cannot maintain a claim against Defendant for false imprisonment.

7. *Issue Preclusion (Collateral Estoppel)from Prior Criminal Prosecution*

Finally, Defendant argues Plaintiff is collaterally estopped from denying facts established by her criminal prosecution relating to the same incident because Plaintiff pleaded not guilty by reason of insanity. Parties are generally precluded from arguing against facts established by a criminal conviction. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 157 (1963) (indicating a prior criminal conviction may estop a party for denying the facts underlying the conviction). Defendant may have a strong claim for issue preclusion from a plea of not guilty by reason of insanity.

The Court does not need to reach the question of issue preclusion in this order and to resolve the issues before it.  What facts Plaintiff may dispute is largely an issue for trial.  Even if the Court applied issue preclusion to this order, it would not change the outcome of the holdings. The Court rejected the claim for false imprisonment because Defendant had probable cause to make an arrest.  Issue preclusion would not alter the outcome of this decision; it would only reinforce the legitimacy of the arrest.  Reckless endangerment is not a tort and therefore cannot go forward regardless of the facts. The claims related to excessive force create genuine issues of material fact even if Plaintiff engaged in criminal behavior and resisted arrest.  Therefore, the Court will not rule on whether issue preclusion applies to pleas of not guilty by reason of insanity at this time.

### **Order**

The Court ***grants in part*** and ***denies in part*** Defendant's motion for summary judgment. The Court ***grants*** Defendant's motion for summary judgment in regard to the reckless endangerment claim (Count IV) and the false imprisonment claim (Count V). The Court ***denies*** Defendant's motion for summary judgment in regard to the claim for assault and battery (Count I), excessive force in violation of 42 U.S.C. § 1983 (Count II), and intentional infliction of emotional distress (Count III).

Dated:

_____
Karen R. Carroll
Superior Court Judge

7